# Exhibit B



# *Professional Liability Insurance*

**CLAIM OFFICE:**

**Mail claims to:**
945 E. Paces Ferry Rd.
Suite 1800
Atlanta, GA  30326-1160

**Fax claims to:**
(404) 231-3755
(Attn: Claims Department)

**Email claims to:**
reportclaims@rsui.com

RSG 51029 0717



**COMMERCIAL LINES COMBINATION POLICY DECLARATIONS**

## Landmark American Insurance Company
(A New Hampshire Stock Co.)
(hereinafter called "the Company")

EXECUTIVE OFFICES:   945 East Paces Ferry Road, Suite 1800, Atlanta, GA  30326

**Policy Number:**   LHC854854          **RENEWAL OF:**   LHC800392

**Named Insured and Mailing Address:**                                      **Producer Name:**

REPRODUCTIVE GENETIC INNOVATIONS LLC AND
REPRODUCTIVE GENETICS INSTITUTE INC
2910 MACARTHUR BLVD.
NORTHBROOK, IL 60062

**Policy Period:**   **From:**   12/31/2023   **To:**  12/31/2024      **12:01 A.M. Standard Time at the Named Insured address as stated herein.**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.  THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

**Business Description:**   EMBRYO STORAGE LAB

| COVERAGE PARTS | PREMIUM |
|---|---|
| **Commercial General Liability** | |
| COMMERCIAL GENERAL LIABILITY COVERAGE FORM - OCCURRENCE | $ Included |
| **Professional Liability** | |
| MEDICAL PROFESSIONAL LIABILITY COVERAGE PART CLAIMS MADE AND REPORTED BASIS - BROAD | $ Included |

|  | |
|---|---|
| **Total Advance Policy Premium** | $ 135,000.00 |
| **Minimum Earned Premium** | $ 33,750.00 |
| Not Subject to Audit | |

**Forms and Endorsements made a part of this policy at time of issue:**  Please see SCHEDULE OF ATTACHMENTS.

(Omits applicable forms and endorsements if shown in specific Coverage Form Declarations.)

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY

| January 04, 2024 | By: | |
|---|---|---|
| Date | | Authorized Representative |

## DECLARATIONS

**Policy Number:**   **LHC854854**                              **Effective Date:**   **12/31/2023**
                                                                                              At 12:01 A.M. Standard Time

**LIMITS OF INSURANCE:**

**CGL and Professional Liability:**

$ 3,000,000 _____   Policy Aggregate Limit

**Commercial General Liability:**

$ Included in Policy Aggregate _____   General Aggregate Limit (Other than Products-Completed Operations)

$ 3,000,000 _____   Products-Completed Operations Aggregate Limit

$ 1,000,000 _____   Personal and Advertising Injury Limit

$ 1,000,000 _____   Each Occurrence

$ 5,000 _____   Medical Payments (Any One Person)

$ 50,000 _____   Damage to Premises Rented to You

**Professional Liability:**

$ 1,000,000 _____   Each Claim

$ Included in Policy Aggregate _____   Aggregate

**DEDUCTIBLE:**   $ 25,000 _____   Each Claim

**RETROACTIVE DATE:**   Coverage                                        Date

                        Commercial General Liability                    N/A

                        Professional Liability                          12/31/2002

THESE DECLARATIONS ARE PART OF THE COMMON POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

**NOTICE:**
This is a claims-made and reported policy.  Please read the policy carefully and discuss the coverage afforded by the policy with your insurance agent or broker.

**LANDMARK AMERICAN INSURANCE COMPANY**

| | |
|---|---|
| Policy Number: | LHC854854 |
| Insurer: | Landmark American Insurance Company |
| Named Insured: | REPRODUCTIVE GENETIC INNOVATIONS LLC AND |

## NOTICE - DISCLOSURE OF TERRORISM PREMIUM

This Coverage Part/Policy covers certain losses caused by terrorism. In accordance with the federal Terrorism Risk Insurance Act, as amended, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to the coverage for terrorist acts certified under the Terrorism Risk Insurance Act.

As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury – in consultation with the Secretary of Homeland Security, and the Attorney General of the United States – to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**DISCLOSURE OF PREMIUM**

The portion of your premium for the policy term attributable to coverage for terrorist acts certified under the Act is

$  0.00                               .

In any case, if the insured rejects terrorism coverage in any scheduled underlying policy, this policy is written to exclude terrorism.

**DISCLOSURE OF FEDERAL PARTICIPATION IN PAYMENT OF TERRORISM LOSSES**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 80% of that portion of the amount of such insured losses that exceeds the applicable **Insurer** retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**CAP INSURER PARTICIPATION IN PAYMENT OF TERRORISM LOSSES**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we will not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

RSG 99054 0121

**LANDMARK AMERICAN INSURANCE COMPANY**

---

**SCHEDULE OF POLICY ATTACHMENTS AND FORMS**

| Form Number | Form Title |
|---|---|
| RSG 99054 0121 | Notice - Disclosure of Terrorism Premium |
| RSG 51039 1017 | Commercial General Liability Coverage Form - Occurrence |
| RSG 51044 0722 | Medical Professional Liability Coverage Part Claims Made and Reported Basis - Broad |
| RSG 51031 0522 | Common Policy Conditions - RSG 51031 0522 |
| ENDT-01 | Abuse Sub - Limit Endorsement (Medical - Broad) - RSG 54143 0621 |
| ENDT-02 | Additional Insured - Blanket - CGL - RSG 55005 0710 |
| ENDT-03 | Additional Insured Endorsement with Carve Back - RSG 55014 1016 |
| ENDT-04 | Communicable Disease Exclusion (CGL only) - RSG 56201 0920 |
| ENDT-05 | Cross Coverage Exclusion - Medical - Broad - RSG 56136 0319 |
| ENDT-06 | Cryptocurrency Exclusion - RSG 56216 0822 |
| ENDT-07 | Deductible Liability Insurance-Comb. Policy-Multiple Ded - RSG 94016 0916 |
| ENDT-08 | Employee Benefits Liability Coverage - RSG 54065 0323 |
| ENDT-09 | Exclusion - Correctional Medicine - RSG 56203 0321 |
| ENDT-10 | Exclusion - Designated Professional Services - RSG 56114 1118 |
| ENDT-11 | Illinois - Service of Suit - RSG 92003 0322 |
| ENDT-12 | Illinois Important Information to Policyholders Right to File a Complaint - RSG 99043 0604 |
| ENDT-13 | Illinois Surplus Lines Disclosure Notice - RSG 99051 0106 |
| ENDT-14 | Independent Contractor Endorsement (Medical) - RSG 54068 0508 |
| ENDT-15 | Minimum Retained Premium - RSG 54025 0405 |
| ENDT-16 | Nuclear Energy Liability Exclusion - RSG 56058 0903 |
| ENDT-17 | Opioid and Controlled Substance Exclusion - RSG 56191 0421 |
| ENDT-18 | Physicians, Surgeons or Dentists Endorsement with Termination - Specified Physicians - RSG 54116 0122 |
| ENDT-19 | Retroactive Date Amendatory Endorsement |
| ENDT-20 | Supplementary Coverages Endorsement (Broad) - RSG 54207 1022 |
| ENDT-21 | Violation of Consumer Protection Laws Exclusion - RSG 56121 1222 |

**Policy No.:** LHC854854

RSG 54081 0710

**LANDMARK AMERICAN INSURANCE COMPANY**

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is an Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle or defend any "claim" or "suit" that may result. But:

      **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

      **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

     No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

   **b.** This insurance applies to "bodily injury" and "property damage" only if:

      **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

      **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or "claim", knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or "claim", includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or "claim":

      **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or "claim" for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.  For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

   **(a)** Employment by the insured; or

   **(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

   **(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

      **(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use by the building's occupants or their guests;

      **(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

      **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

   **(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

   **(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

      **(i)** Any insured; or

      **(ii)** Any person or organization for whom you may be legally responsible;

   **(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** "Claim" or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such "claim" or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q.  Asbestos**

"Bodily injury" or "property damage" for past, present or future claims arising in whole or in part either directly or indirectly, out of the manufacture, distribution, sale, re-sale, re-branding, installation, repair, removal, encapsulation, abatement, disposal of, replacement or handling of, exposure to, testing for or failure to disclose the presence of, asbestos or products containing asbestos whether or not the asbestos is or was at any time airborne as a fiber or particle, contained in a product, carried on clothing, inhaled, transmitted in any fashion or found in any form whatsoever.

It is further agreed that this insurance does not apply to "bodily injury" or "property damage" including expenses for;

**(1)**  The costs of clean up or removal of asbestos or products and materials containing asbestos;

**(2)**  The cost of such actions as may be necessary to monitor, assess and evaluate the release or threat of asbestos or products and material containing asbestos;

**(3)**  The cost of disposal of asbestos substances or the taking of such other action as may be necessary to temporarily or permanently prevent, minimize or mitigate damage to the public health or welfare or to the environment, which may otherwise result; or

**(4)**  The cost of compliance with any law or regulation regarding asbestos.

**r.  Biological Contaminants**

Any "claim" arising out of a "biological contaminant".

"Biological contaminant" means any biological irritant or contaminant including but not limited to any form of mold, mildew, mushroom, yeast, fungus, bacteria, virus, insect, allergen and any other type of biological agent, including any substance produced by, emanating from, or arising out of such "biological contaminant".

**s.  Employment Practices**

Any "claim" arising out of or in any way related to:

**(1)**  Refusal to employ;

**(2)**  Termination of employment;

**(3)**  Coercion, demotion, performance evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment related practices, procedures, policies, acts or omissions; or

**(4)**  Consequential "bodily injury" or "personal and advertising injury" as a result of **(1)** through **(3)** above.

This exclusion applies whether the Insured may be held liable as an employer or in any other capacity and to any obligation to share "damages" with or to repay someone else who must pay "damages" because of the injury.

It is further agreed that no coverage shall apply under this policy to any "claim" brought by or against any spouse, child, parent, brother or sister of the Insured or any other person.

The Company shall not have a duty to defend any "claim", "suit", arbitration or any other form of a trial court proceeding.

**t.  Lead**

"Bodily injury" or "property damage" for past, present or future claims arising in whole or in part, either directly or indirectly, out of the manufacture, distribution, sale, resale, re-branding, installation, repair, removal, encapsulation, abatement, disposal of, replacement or handling of, exposure to, ingestion of or testing for, lead or products containing lead whether or not the lead is or was at any time airborne as a particle, contained in a product, carried on clothing, inhaled, transmitted in any fashion or found in any form whatsoever.

It is further agreed that this insurance does not apply to "bodily injury" or "property damage" including expenses for:

**(1)** The costs of clean up or removal of lead or products and materials containing lead;

**(2)** The cost of such actions as may be necessary to monitor, assess and evaluate the release or threat of same, of lead or products and material containing lead;

**(3)** The cost of disposal of lead substances or the taking of such other action as may be necessary to temporarily or permanently prevent, minimize or mitigate damage to the public health or welfare or to the environment, which may otherwise result; or

**(4)** The cost of compliance with any law or regulation regarding lead.

**u. Sexual Abuse**

Any "claims" involving the use of excessive influence or power on any individual, or the actual or alleged inappropriate physical contact or contact that is deemed by or alleged by the individual to be sexual or in any way unwelcome.

**v. Prior Knowledge**

Any alleged act, error, omission, or circumstance likely to give rise to a "claim" that an Insured had knowledge of prior to the effective date of this policy. This exclusion includes, but is not limited to any prior "claim" or possible "claim" referenced in the Insured's application.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle or defend any "claim" or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.  Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **15.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** "Claim" or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. Asbestos**

"Personal and advertising injury" for past, present or future claims arising in whole or in part either directly or indirectly, out of the manufacture, distribution, sale, resale, re-branding, installation, repair, removal, encapsulation, abatement, disposal of, replacement or handling of, exposure to, testing for or failure to disclose the presence of, asbestos or products containing asbestos whether or not the asbestos is or was at any time airborne as a fiber or particle, contained in a product, carried on clothing, inhaled, transmitted in any fashion or found in any form whatsoever.

It is further agreed that this insurance does not apply to "personal and advertising injury" including expenses for:

**(1)** The costs of clean up or removal of asbestos or products and materials containing asbestos;

**(2)** The cost of such actions as may be necessary to monitor, assess and evaluate the release or threat of asbestos or products and material containing asbestos;

**(3)** The cost of disposal of asbestos substances or the taking of such other action as may be necessary to temporarily or permanently prevent, minimize or mitigate damage to the public health or welfare or to the environment, which may otherwise result; or

**(4)** The cost of compliance with any law or regulation regarding asbestos.

**p. Biological Contaminants**

Any "claim" arising out of a "biological contaminant".

"Biological contaminant" means any biological irritant or contaminant including but not limited to any form of mold, mildew, mushroom, yeast, fungus, bacteria, virus, insect, allergen and any other type of biological agent, including any substance produced by, emanating from, or arising out of such "biological contaminant".

**q. Employment Practices**

Any "claim" arising out of or in any way related to:

**(1)** Refusal to employ;

**(2)** Termination of employment;

**(3)** Coercion, demotion, performance evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment related practices, procedures, policies, acts or omissions; or

**(4)** Consequential "bodily injury" or "personal and advertising injury" as a result of **(1)** through **(3)** above.

This exclusion applies whether the Insured may be held liable as an employer or in any other capacity and to any obligation to share "damages" with or to repay someone else who must pay "damages" because of the injury.

It is further agreed that no coverage shall apply under this policy to any "claim" brought by or against any spouse, child, parent, brother or sister of the Insured or any other person.

The Company shall not have a duty to defend any "claim", "suit", arbitration or any other form of a trial court proceeding.

**r.** **Lead**

"Personal and advertising injury" for past, present or future claims arising in whole or in part, either directly or indirectly, out of the manufacture, distribution, sale, resale, re-branding, installation, repair, removal, encapsulation, abatement, disposal of, replacement or handling of, exposure to, ingestion of or testing for, lead or products containing lead whether or not the lead is or was at any time airborne as a particle, contained in a product, carried on clothing, inhaled, transmitted in any fashion or found in any form whatsoever.

It is further agreed that this insurance does not apply to "personal and advertising injury" including expenses for:

**(1)** The costs of clean up or removal of lead or products and materials containing lead;

**(2)** The cost of such actions as may be necessary to monitor, assess and evaluate the release or threat of same, of lead or products and material containing lead;

**(3)** The cost of disposal of lead substances or the taking of such other action as may be necessary to temporarily or permanently prevent, minimize or mitigate damage to the public health or welfare or to the environment, which may otherwise result; or

**(4)** The cost of compliance with any law or regulation regarding lead.

**s.** **Sexual Abuse**

Any "claims" involving the use of excessive influence or power on any individual, or the actual or alleged inappropriate physical contact or contact that is deemed by or alleged by the individual to be sexual or in any way unwelcome.

**t.** **Prior Knowledge**

Any alleged act, error, omission, or circumstance likely to give rise to a "claim" that an Insured had knowledge of prior to the effective date of this policy. This exclusion includes, but is not limited to any prior "claim" or possible "claim" referenced in the Insured's application.

**u.** **War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**v.** **Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

**COVERAGE C – MEDICAL PAYMENTS**

**1. Insuring Agreement**

    **a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

        **(1)** On premises you own or rent;

        **(2)** On ways next to premises you own or rent; or

        **(3)** Because of your operations;

        provided that:

            **(a)** The accident takes place in the "coverage territory" and during the policy period;

            **(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

            **(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

    **b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

        **(1)** First aid administered at the time of an accident;

        **(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

        **(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

    **a. Any Insured**

    To any insured, except "volunteer workers".

    **b. Hired Person**

    To a person hired to do work for or on behalf of any insured or a tenant of any insured.

    **c. Injury On Normally Occupied Premises**

    To a person injured on that part of premises you own or rent that the person normally occupies.

    **d. Workers' Compensation And Similar Laws**

    To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

    **e. Athletics Activities**

    To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletics contests.

    **f. Products-Completed Operations Hazard**

    Included within the "products-completed operations hazard".

    **g. Coverage A Exclusions**

    Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any occurrence we investigate or any "claim" or "suit" against an insured that we settle or defend:

    **a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the "claim" or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit".  However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

  **(1)** Agrees in writing to:

   **(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

   **(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

   **(c)** Notify any other insurer whose coverage is available to the indemnitee; and

   **(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

  **(2)** Provides us with written authorization to:

   **(a)** Obtain records and other information related to the "suit"; and

   **(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" but will reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker") or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** "Claims" made or "suits" brought; or

**c.** Persons or organizations making "claims" or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**b.** Damages under Coverage **B.**

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for Damages under Coverage **A** because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or offense which may result in a "claim". To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a "claim" is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the "claim" or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or a "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builders' Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

      **(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

      **(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

   **(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

  **(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

  **(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

   **(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

   **(b)** The total of all deductible and self-insured amounts under all that other insurance.

  **(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

Premium for this coverage is computed in accordance with the Company's rules and rates. Any premium shown as advance premium may be a deposit premium only. If the premium is a deposit premium, at the close of each audit period, the Company will compute the earned premium for that period. Audit premiums are due and payable upon notice.

The Company may examine and audit the Insured's books and records at any time during the policy period and within three years after the final termination of this policy, as far as they relate to the subject matter of this policy.

The first Named Insured as shown in the Declarations must keep records of information the Company will need for premium computation and upon request must send the Company copies of the information.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom "claim" is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 60 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Claim" is a written demand for damages because of actual or alleged "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. "Claim" includes any "suit" as defined in this Policy.

**5.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined only by actual law suits filed and maintained within the territory described in Paragraph **a.** above. This policy does not apply to "claims" pursued elsewhere.

**6.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**7.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

8. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

9. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

10. "Insured contract" means:

    a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    b. A sidetrack agreement;

    c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    e. An elevator maintenance agreement;

    f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

       Paragraph **f.** does not include that part of any contract or agreement:

       (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

       (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

           (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

           (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

       (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

11. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

12. "Loading or unloading" means the handling of property:

    a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    b. While it is in or on an aircraft, watercraft or "auto"; or

    c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

    but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**13.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **b.** Vehicles maintained for use solely on or next to premises you own or rent;

    **c.** Vehicles that travel on crawler treads;

    **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        **(1)** Power cranes, shovels, loaders, diggers or drills; or

        **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        **(2)** Cherry pickers and similar devices used to raise or lower workers;

    **f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

    However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

        **(1)** Equipment designed primarily for:

            **(a)** Snow removal;

            **(b)** Road maintenance, but not construction or resurfacing; or

            **(c)** Street cleaning;

        **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

        **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**14.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**15.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** The use of another's advertising idea in your "advertisement".

**16.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

17. "Products-completed operations hazard":

    **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        **(1)** Products that are still in your physical possession; or

        **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            **(a)** When all of the work called for in your contract has been completed.

            **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    **b.** Does not include "bodily injury" or "property damage" arising out of:

        **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

        **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

        **(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

18. "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from, computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

19. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

20. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

21. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

22. "Your product":

    **a.** Means:

        **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        **(a)** You;

        **(b)** Others trading under your name; or

        **(c)** A person or organization whose business or assets you have acquired; and

    **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)** The providing of or failure to provide warnings or instructions.

  **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**23.** "Your work":

  **a.** Means:

    **(1)** Work or operations performed by you or on your behalf; and

    **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    **(2)** The providing of or failure to provide warnings or instructions.

*This Form Provides Claims-Made Coverage.*
*Please Read The Entire Form Completely.*

# MEDICAL PROFESSIONAL LIABILITY COVERAGE PART – CLAIMS MADE AND REPORTED BASIS – BROAD FORM

Throughout this document, the word "Insured" means any person or entity qualified as such under **Part I. E. Covered Persons and Entities**.  The word "Company" refers to the Company providing the insurance shown on the Declarations.

Other words and phrases that appear in **bold** have special meaning.  Refer to **Part III. Definitions**.

**Part I. Insuring Agreement**

**A. Covered Services**

The Company will pay on behalf of the Insured, as shown in the Declarations, all sums that the Insured becomes legally obligated to pay as **Damages** and associated **Claim Expenses** arising out of a negligent act, error or omission, even if the **Claim** asserted is groundless, false or fraudulent, in the rendering of or failure to render professional services as described in the Business Description on the Declarations, provided that the:

1. **Claim** is first made against the Insured during the **Policy Period,** and reported to the Company no later than sixty (60) days after the end of the **Policy Period**;

2. Negligent act, error or omission took place in a covered territory;

3. Negligent act, error or omission took place after the **Retroactive Date** as shown in the Declarations.

**B. Defense and Settlement**

The Company will have the right and duty to defend any **Claim** against an Insured seeking **Damages** to which this policy applies, even if any of the allegations of the **Claim** are groundless, false or fraudulent. The Company's right and duty to defend any **Claim** shall end when the Company's Limit of Liability has been exhausted by payment of **Damages** and/or **Claim Expenses**, or has been tendered to the Insured or to a court of competent jurisdiction.

The Company shall not settle any **Claim** without the Insured's written consent.  The Insured shall not admit any liability for or settle any **Claim** or incur any costs, charges or expenses without the written consent of the Company.

The Company shall have the right and the duty to select legal counsel for the defense of a **Claim**. In the event the Insured is entitled by law to select independent counsel to defend the **Claim**, the **Claim Expenses** or other covered costs the Company must pay to that counsel are limited to the rates the Company actually pays to counsel retained by the Company in the defense of similar **Claims** in the community where the **Claim** is being defended. The Company may exercise the right to require that such counsel have experience in defending **Claims** similar to the one pending against the Insured. The Insured agrees that such counsel will comply with the Company's litigation guidelines and reporting requirements, timely respond to the Company's requests, and provide information regarding the **Claim** when requested.

**C. Policy Limits**

Regardless of the number of persons or entities insured or included in **Part I. E. Covered Persons and Entities,** or the number of claimants or **Claims** made against the Insured:

1. The maximum liability of the Company for **Damages** resulting from each **Claim** first made against the Insured during the **Policy Period** and the Extended Reporting Period, if purchased, shall not exceed the amount shown in the Declarations as each **Claim**;

2. The maximum liability of the Company for all **Damages** as a result of all **Claims** first made against

the Insured during the **Policy Period** and the Extended Reporting Period, if purchased, shall not exceed the amount shown in the Declarations as Aggregate.

The inclusion of more than one Insured, or the making of **Claims** by more than one person or organization, does not increase the Company's Limit of Liability. All **Claims** arising out of a single negligent act, error or omission, or a series of related negligent acts, errors or omissions by one or more Insureds shall be treated as a single **Claim** for all purposes of this policy. All **Claims** shall be deemed first made when the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period** and all such **Claims** shall be subject to the same Each Claim Limit of Liability during that **Policy Period**.

**Claim Expenses** shall be paid by the Company in addition to the applicable Limits of Liability stated in the Declarations. The Company's obligation to pay **Claim Expenses** in addition to the applicable Limits of Liability as shown in the Declarations shall be limited to an additional **Claims Expense** Limits of Liability equal to the amount as shown in the Declarations as the Each Claim Limit of Liability.

The Company shall not be obligated to pay any **Claim** for **Damages** or defend any **Claim** after the Limit of Liability has been exhausted by payment of judgments, settlements, **Claim Expenses** or any combination thereof.

**D. Deductible Provisions**

The deductible amount as shown in the Declarations shall be paid by the Insured and applies to each **Claim** and includes **Damages** or **Claim Expenses,** whether or not a loss payment is made. If the deductible amount is initially paid by the Company, the Named Insured shall reimburse the amount paid within thirty (30) days, upon written request of the Company.

**E. Covered Persons and Entities**

1. Named Insured as shown in the Declarations, and if the Named Insured is an individual, his or her spouse, or domestic partner, but only with respect to the professional services rendered by or on behalf of the Named Insured;

2. Any present or former principal, partner, officer, director, member, employee or volunteer worker of the Named Insured, but only as respects professional services rendered on behalf of the Named Insured;

3. Heirs, Executors, Administrators, and in the event of an Insured's death, incapacity or bankruptcy, legal representatives of any Insured, but only with respect to professional services rendered prior to such Insured's death, incapacity or bankruptcy;

4. Any Medical Director while acting within the scope of his/her administrative and supervisory duties for the Named Insured. It is further agreed that coverage does not apply to the Medical Director while acting within his/her capacity as a Physician, Surgeon or Dentist in the treatment, or direction of the treatment, of any patient;

5. Any student enrolled in a training program, but only while acting within the scope of their duties as such and under the direct supervision of faculty members or educators of such training program;

6. Any faculty member or educator of a training program, but only while acting within the scope of their duties as such.

**F. Covered Territory**

This policy applies to covered **Claims** arising out of negligent acts, errors or omissions committed anywhere in the world. However, the policy does not provide coverage for **Claims** made against the Insured in countries where the United States of America has declared or imposed a trade embargo or sanctions, or in countries where the United States of America does not maintain diplomatic relations.

**G. Extended Reporting Period**

If the policy is not renewed for any reason, or is cancelled for any reason other than for nonpayment of premium or deductible (whether cancelled by the Company or by the Named Insured), the Named Insured as shown on the Declarations, has the right to purchase, within sixty (60) days of policy termination, an extension of the coverage granted by this policy. This reporting period extension shall

remain in force for a period of either twelve (12), twenty-four (24), or thirty-six (36) months after the policy terminates, but only for **Claims** resulting from negligent acts, errors or omissions committed before the effective date of the cancellation or nonrenewal, and otherwise covered by this policy. Increased premiums or deductibles or modifications of coverage terms or conditions upon renewal do not constitute cancellation or nonrenewal.

The premium for this Extended Reporting Period will not exceed one hundred percent (100%) for twelve months, one hundred fifty percent (150%) for twenty-four months or one hundred seventy-five percent (175%) for thirty-six months of the full annual premium set forth in the Declarations and any attached endorsements, and must be elected and paid within sixty (60) days after the effective date of the policy's termination. Such additional premium is deemed fully earned immediately upon the inception of the Extended Reporting Period.

The Extended Reporting Period is added by endorsement and, once endorsed, cannot be cancelled. The Extended Reporting Period does not reinstate or increase the Limits of Liability. The Company's Limits of Liability during the Extended Reporting Period are part of, and not in addition to, the Company's Limits of Liability stated in the Declarations.

**H. Supplementary Coverages**

It is agreed that any and all payments made for the following is included within, and shall not be in addition to, the Policy Limits as described in this Policy.

**1.** The Company will pay **Claim Expenses** incurred in the defense of any disciplinary proceeding or investigation against an Insured by any licensing board, disciplinary board, peer review committee, or similar entity alleging professional misconduct or violation of the rules of professional conduct, provided that the alleged misconduct or violation first occurred after the **Retroactive Date** and arises out of the Insured's performance of the Named Insured's professional services as described in the Declarations. This provision applies only to disciplinary proceedings first brought against an Insured during the **Policy Period** and reported to the Company no later than sixty (60) days after the end of **Policy Period**. The Company's obligation to defend an Insured under the provision is subject to a sub-Limit of Liability of $25,000 and applies only to **Claims Expenses** incurred with the consent of the Company. **Damages** are not covered by this provision.

This sub-Limit of Liability is the maximum amount payable under this provision for the **Policy Period**, regardless of the number of disciplinary proceedings first commenced during the **Policy Period** or the number of Insureds subject to disciplinary proceedings. There will be no deductible for payments made under this provision, and any such payments are a part of, and not in addition to, the Company's Limits of Liability as described in the Declarations.

**2.** The Company will pay reasonable expenses incurred by the Insured at the Company's request to assist in the investigation of the **Claim** or defense of the suit, including actual loss of earnings up to $500 a day for each Insured because of time off from work, subject to an aggregate amount of $5,000 for each individual Insured for each **Claim**, not to exceed an aggregate amount of $10,000 per **Policy Period**. There will be no deductible for payments made under this provision, and any such payments are a part of, and not in addition to, the Company's Limits of Liability as described in the Declarations.

**3.** The Company will pay fines and penalties specified in the Health Insurance Portability and Accountability Act of 1996 (HIPAA), and the Health Information Technology for Economic and Clinical Health Act (HITECH) as assessed against the Insured, or assessed against third parties who make a claim on the Insured for indemnification or contribution for such fines and penalties based on violations and breaches of the privacy and security provisions of HIPAA, and HITECH, and/or regulations promulgated under said statutes relating to Protected Health Information (PHI) and electronic Protected Health Information (ePHI), but only if such violations or breaches arise out of professional services as described in the Declarations or from the handling of PHI or ePHI of the Insured's own personnel.

For the purposes of this coverage, **Claim** shall also include the notice of investigation, audit, and/or assessment of fines or penalties by the U.S. Department of Health and Human Services or the Office of Civil Rights in connection with violations of or breaches under HIPAA and/or HITECH.

For the purposes of this coverage, **Damages** shall also include HIPAA and/or HITECH fines and

penalties.

The coverage described above is subject to a sub-Limit of Liability in an aggregate amount of $100,000. This sub-Limit of Liability is the maximum amount payable under this provision for the **Policy Period**, regardless of the number of violations and/or breaches by the Insured of the privacy and security provisions of HIPAA and HITECH and the regulations established thereunder arising from the performance of or failure to perform professional services as described in the Declarations. Any payments made under this provision are a part of, and not in addition to, the Company's Limits of Liability as described in the Declarations.

4. The Company will pay **Damages** or **Claims Expenses** as a result of **Claims** arising out of circumstances involving the use of excessive influence of power on any patient, or the actual or alleged inappropriate physical contact or contact that is deemed by or alleged by any patient to be sexual or in any way unwelcomed, is limited to a sub-Limit of Liability of $250,000 each claim and $500,000 in the aggregate. This sub-limit of liability is part of and not in addition to the applicable Limits of Liability as shown in the Declarations. Payment of **Damages** or **Claim Expenses** by the Company reduces the applicable Limits of Liability as shown in the Declarations.

Once the sub-Limit of Liability is exhausted, no additional coverage shall be afforded by this coverage provision and the following Exclusion will be added to the policy:

It is agreed that no coverage shall apply under this policy to any **Claim** or **Claim Expenses** arising out of or involving the use of excessive influence or power on any patient, or the actual or alleged inappropriate physical contact or contact that is deemed by or alleged by any patient to be sexual or in any way unwelcomed.

## Part II. Exclusions

This policy does not apply to any **Claim** or **Claim Expenses** based upon or arising out of:

A. **Personal and Advertising Liability**.

B. Obligations of any Insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

C. **Bodily Injury** to any of the following:

1. Officers, directors, partners, employees or volunteer workers of the Insured arising out of and in the course of employment by the insured;

2. The spouse, child, parent, or sibling of **C. (1.)** above.

D. The insolvency or bankruptcy of an Insured or of any other person, firm or organization.

E. Dishonest, fraudulent, criminal, malicious, or intentional acts, errors or omissions committed by or at the direction of any Insured.

F. Any business enterprise not named in the Declarations which is owned, controlled, operated or managed by any Insured.

G. A **Claim** by one Insured under this policy against another Insured under this policy, unless such **Claim** arises solely out of professional services performed for that party.

H. Any obligation or liability assumed by the Insured under any contract or any oral or written agreement, unless liability would have attached in the absence of such a contract or agreement, including the Insured's decision to unilaterally terminate or otherwise alter, remove or abridge any rights, benefits or obligations under any contract or agreement.

I. The ownership, rental, leasing, maintenance, use (including operation, loading and unloading), or repair of any real or personal property, including **Damage** to property owned, occupied or used by, rented to or leased to an Insured.

J. The rendering or failure to render professional services by the Insured as a physician, surgeon or dentist.

K. The performance of any service by any Insured while under the influence of intoxicants or illegal drugs.

**L.** The ownership, maintenance, use (including operation, loading and unloading), or entrustment to others of any aircraft, automobile, motor vehicle, mobile vehicles or watercraft owned or operated by or rented or loaned to any insured.  This exclusion includes the movement of patients in and out of any motor vehicle, aircraft, automobile or watercraft.

**M.** **1.** The actual, alleged or threatened presence, discharge, dispersal, seepage, migration, release or escape of **Pollutants** or asbestos;

**2.** The failure to discover or disclose the existence or amount of **Pollutants** or asbestos;

**3.** Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with **M. (1.)** or **(2.)** above;

**4.** Any request, demand or order that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or, in any way respond to or assess the effects of **Pollutants** or asbestos;

**5.** Any **Claim** or suit by or on behalf of a governmental authority for **Damages** because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or, in any way, responding to, or assessing the effect of **Pollutants** or asbestos.

**N.** **1.** Refusal to employ;

**2.** Termination of employment;

**3.** Coercion, demotion, performance evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, retaliation or other employment related practices, procedures, policies, acts or omissions;

**4.** Consequential **Bodily Injury** or **Personal Injury** as a result of **N. (1.)** through **(3.)** above.

This exclusion applies whether the Insured may be held liable as an employer or in any other capacity and to any obligation to share **Damages** with or to repay someone else who must pay **Damages** because of the injury.

It is further agreed that no coverage shall apply under this policy to any **Claim** brought by or against any spouse, child, parent, brother or sister of the Insured or any other person. The Company shall not have a duty to defend any **Claim**, suit, arbitration or any other form of trial court proceeding.

**O.** Any alleged act, error, omission, or circumstance likely to give rise to a **Claim** that an Insured had knowledge of prior to the effective date of this policy.  This exclusion includes, but is not limited to, any prior **Claim** or possible **Claim** referenced in the Insured's application.

**P.** Infringement of copyright, patent, trademark, trade name, trade dress, service mark, title or slogan.

**Q.** Experimental procedures and experimental products, including procedures using experimental products. Experimental procedures and products are those not approved by the United States Food and Drug Administration (FDA).

**R.** Obstetrical procedures, including but not limited to any emergency obstetrical procedures.

**Part III. Definitions**

**A.** **Advertisement** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**1.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**2.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**B.** **Bodily Injury** means physical or mental harm, sickness or disease sustained by a person including death resulting from any of these at any time.

**C.** **Claim** means a written demand for monetary or non-monetary relief received by the Insured during the **Policy Period**, including the service of suit, or the institution of an arbitration proceeding.  Additionally,

**Claims** that arise from an incident, occurrence or offense first reported by the Insured during the **Policy Period** and accepted by the Company in accordance with **Part IV. A. Notice of Claim** will be considered a **Claim** first made during the **Policy Period**.

**D.** **Claim Expense** means expenses incurred by the Company or the Insured with the Company's consent in the investigation, adjustment, negotiation, arbitration, mediation and defense of covered **Claims**, whether paid by the Company or the Insured with the Company's consent, and includes:

1. Attorney fees;

2. Costs taxed against the Insured in any **Claim** defended by the Company;

3. Interest on the full amount of any judgment that accrues after entry of the judgment and before the Company has paid, offered to pay or deposited in court the part of the judgment that is within the applicable Limit of Liability;

4. The cost of appeal bonds or bonds to release attachments, but only for bond amounts within the available applicable policy limit and only if said **Claims** are covered by the policy;

5. Reasonable expenses incurred by the Insured at the Company's request other than:

    **a.** Loss of earnings;

    **b.** Salaries or other compensation paid to the Insured or any employee of the Insured.

**E.** **Damages** means compensatory judgment, award or settlement, including punitive or exemplary damages, except damages for which insurance is prohibited by law. **Damages** does not include disputes over fees, deposits, commissions or charges for goods or services.

**F.** **Policy Period** means the period of time stated in the Declarations or any shorter period resulting from policy cancellation or amendment to the policy.

**G.** **Personal and Advertising injury** means injury, including consequential **Bodily Injury,** arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment;

2. Malicious prosecution or abuse of process;

3. Wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5. Oral or written publication, in any manner, of material that violates a person's right of privacy;

6. Use of another's advertising idea in your **Advertisement**; or

7. Infringing upon another's copyright, trade dress or slogan in your **Advertisement**.

**H.** **Retroactive Date** means the date stated in the Declarations on or after which any alleged or actual negligent act, error or omission must have first taken place in order to be considered for coverage under this policy.

**I.** **Pollutants** means any solid, liquid, gaseous or thermal irritant, contaminant or toxin, whether live or inanimate; including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals, metals, silica, lead, lead compounds or materials containing lead, asbestos, asbestos compounds or materials containing asbestos, radon, waste or any like substances. Waste includes materials to be recycled, reconditioned or reclaimed.

**Part IV. General Conditions**. The following Conditions are a precedent to coverage under the Policy:

**A.** **Notice of Claim**

The Insured must notify the Company as soon as practicable of an incident, occurrence or offense that may reasonably be expected to result in a **Claim**. Where notice to the Company of such incidents, occurrences or offenses has been acknowledged as adequate by the Company in writing, subsequent

**Claims** derived from such incidents, occurrences or offenses will be deemed as first made at the time the incident, occurrence or offense giving rise to such **Claim** was first provided. The Insured also must immediately send copies to the Company of any demands, notices, summonses or legal papers received in connection with any **Claim**, and must authorize the Company to obtain records and other information. Please send all claim information to:

Attention: **Claims** Dept.
RSUI Group, Inc.
945 East Paces Ferry Road, Suite 1800
Atlanta, Georgia 30326-1160
Or Via Email:
reportclaims@rsui.com

**B. Prohibition of Voluntary Payments and Settlements**

With respect to any **Claim** covered under this policy, the Insured will not make payment, admit liability, settle **Claims,** assume any obligation, agree to arbitration or any other means of resolution of any dispute, waive any rights or incur **Claim Expenses** without prior written Company approval, except at the Insured's own cost.

**C. Cooperation**

The Insured will cooperate with the Company in the conduct of a **Claim** and, upon the Company's request, submit to examination and interrogation by the Company representative, under oath if required, and will attend hearings and trials and assist in effecting settlements, securing and giving evidence, and obtaining the attendance of witnesses. The Insured shall further cooperate with the Company and do whatever is necessary to secure and effect any rights of indemnity, contribution or apportionment that the Insured may have, and the Company may exercise those rights in the name of the Insured.

**D. Nonrenewal**

The Company will give the Named Insured sixty (60) days written notice prior to nonrenewal of this policy by mailing or delivering the notice to the first Named Insured's last known mailing address as shown in the Declarations.

**E. Premium and Audit**

Premium for this coverage is computed in accordance with the Company's rules and rates. Any premium shown as advance premium may be a deposit premium only. If the premium is a deposit premium, at the close of each audit period, the Company will compute the earned premium for that period. Audit premiums are due and payable upon notice.

The Company may examine and audit the Insured's books and records at any time during the **Policy Period** and within three years after the final termination of this policy, as far as they relate to the subject matter of this policy.

The first Named Insured, as shown in the Declarations, must keep records of information the Company will need for premium computation and, upon request, must send the Company copies of the information.

**F. Authorization**

The first Named Insured listed in the Declarations agrees to act as the Named Insured with respect to giving and receiving of all notices, exercising the Extended Reporting Period option, canceling the policy, paying all premiums and deductibles and receiving any return premiums that may become due.

**G. Subrogation**

In the event of any **Claim** under this policy, the Company will be subrogated to all the Insured's rights of recovery against any person or organization, and the Insured will execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured will do nothing after the loss to prejudice such rights.

**H. Other Insurance**

This policy will be excess over, and will not contribute with, any other existing insurance, unless such

other insurance is specifically written to be excess of this policy.

When this insurance is excess, the Company shall have no duty under this policy to defend any **Claim** or suit that any other insurer has a duty to defend. If such other insurer refuses to defend such **Claim** or suit, the Company shall be entitled to the Insured's rights against all such insurers for any **Claim Expenses** incurred by the Company.

If it is determined that both this insurance and other insurance or self insurance apply to any **Claim** on the same basis, whether primary, excess or contingent, the Company will not be liable under this policy for a greater proportion of the **Damages** or **Claim Expenses** than the applicable Limit of Liability under the policy for such **Damages** bears to the total applicable Limit of Liability of all other insurance or self insurance, whether or not collectible against such **Claims.**

**I. Actions Against the Insurer**

No action will be taken against the Company unless, as a condition precedent, the Insured is in full compliance with all of the terms of this policy, and until the amount of the Insured's obligations to pay shall have been finally determined, either by judgment against the Insured after actual trial, or by written agreement of the Insured, the claimant and the Company.

**J. Coverage in Bankruptcy**

Bankruptcy or insolvency of the Insured or of the Insured's estate does not relieve the Company of its obligations under this policy.

**K. False or Fraudulent Claims**

If an Insured knowingly makes any **Claim** that is false or fraudulent, this insurance shall become void and entitlement to coverage for all **Claims** hereunder shall be forfeited.

**L. Application**

The Insured agrees that the statements in the application are personal representations, that they shall be deemed material and that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between the Insured and the Company, or any of its agents, relating to this insurance. The signed application, and any attachments thereto, submitted in connection with this Policy are incorporated herein and constitute a part of this Policy.

**LANDMARK AMERICAN INSURANCE COMPANY**

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. CANCELLATION**

    **1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

    **2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

        **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium or deductible; or

        **b.** 60 days before the effective date of cancellation if we cancel for any other reason.

    **3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

    **4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

    **5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

    **6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. CHANGES**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. EXAMINATION OF YOUR BOOKS AND RECORDS**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. INSPECTIONS AND SURVEYS**

We have the right but are not obligated to:

    **1.** Make inspections and surveys at any time;

    **2.** Give you reports on the conditions we find; and

    **3.** Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    **1.** Are safe or healthful; or

    **2.** Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**E. PREMIUMS**

The first Named Insured shown in the Declarations:

**1.** Is responsible for the payment of all premiums; and

**2.** Will be the payee for any return premiums we pay.

**F.  TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.



A Berkshire Hathaway Company

945 E Paces Ferry Rd NE | Suite 1800
Atlanta, Georgia 30326
404.231.2366. rsui.com

ATTN: Health Care Providers – Applicants and Policyholders

RE:     HIPAA Privacy and Security Rule Compliance

The Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and associated regulations require health care providers to maintain the confidentiality of patients' protected health information ("PHI"). PHI includes, among other things, medical records and billing records relating to medical care. As a "covered entity" under HIPAA, you are not permitted to share PHI with a "business associate" unless the business associate has provided you with a Business Associate Agreement that provides for the protection of PHI. Although a professional liability insurer may not be deemed to be a "business associate" as defined by HIPAA, we want to assure your compliance with the regulations in the event a Business Associate Agreement is necessary.

We are committed to maintaining the confidentiality of PHI that you may provide as a part of the administration of your insurance coverage. Enclosed you will find a Business Associate Agreement that explains how we will safeguard any PHI that you may provide to us in the process of underwriting your policy or handling a claim on your behalf. Please review it and keep it with your professional liability policy. You do not need to sign or return this agreement to us. Please maintain it in your files to document our mutual obligations with respect to PHI.

If you have any questions or concerns about the Business Associate Agreement, please contact Whitney Thomas at (404)260-3795 or whitneythomas@rsui.com.

Sincerely,

Whitney Thomas
Regulatory Compliance
RSUI Group, Inc.

## BUSINESS ASSOCIATE AGREEMENT

THIS BUSINESS ASSOCIATE AGREEMENT ("Agreement") is executed by Landmark American Insurance Company, Covington Specialty Insurance Company, RSUI Indemnity Company and RSUI Group, Inc. ("Business Associate") in favor of its insured healthcare providers (the "Provider").

## RECITALS

WHEREAS, the Business Associate provides professional liability insurance to the Provider pursuant to a policy of insurance (the "Business Arrangement"), and in connection with the Business Arrangement the Provider discloses to the Business Associate certain individually identifiable protected health information ("PHI") that is subject to protection under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), as amended from time to time.

WHEREAS, the parties desire to comply with the HIPAA standards for privacy of PHI of patients of the Provider, and to set forth the terms and conditions pursuant to which the parties will handle PHI that Business Associate receives in the course of performing its services for or on behalf of the Provider under the Business Arrangement.

NOW THEREFORE, for and in consideration of the recitals above, the benefits to Business Associate under the Business Arrangement and the mutual covenants and conditions herein contained, Business Associate agrees as follows:

## SECTION 1 – DEFINITIONS

Terms used, but not otherwise defined in the Agreement shall have the same meaning as set forth in the Standards for Privacy of Individually Identifiable Health Information (the "Privacy Rules"), 45 CFR parts 160-164, as promulgated by the United States Department of Health and Human Services ("HHS"), as amended from time to time.

## SECTION II – OBLIGATIONS AND ACTIVITIES OF BUSINESS ASSOCIATE

a. Business Associate agrees to not use or disclose PHI other than as permitted or required by this Agreement or as required by law.

b. Business Associate agrees to use appropriate safeguards to prevent use or disclosure of the PHI other than as provided for by this Agreement.

c. Business Associate agrees to mitigate, to the extent practicable, any harmful effect that is known to Business Associate of a use or disclosure of PHI by Business Associate in violation of the requirements of this Agreement.

d. Business Associate agrees to report to Provider any use or disclosure of the PHI, of which it becomes aware, and otherwise not provided for by this Agreement.

e. Business Associate shall require its agents and subcontractors that receive PHI from Business Associate or Provider to agree to the same restrictions and conditions that apply through this Agreement to Business Associate with respect to such information.

f. Business Associate agrees to make available and provide right of access to PHI held by the Business Associate that does not merely duplicate the information maintained by the Provider, to Provider at its request, or as directed by Provider, to an Individual. Business Associate shall provide access within reasonable time and manner as specified by Provider.

g.  Business Associate agrees to incorporate all amendments or corrections to PHI when notified by the Provider in writing that such information is inaccurate or incomplete.  45 CFR § 164.526

h.  Business Associate agrees to make available to the Secretary of HHS (or its designee) all internal practices, books, and records relating to the use and/or disclosure of PHI received from the Provider, for purposes of determining the Provider's compliance with the Privacy Rules, subject to attorney-client and other applicable legal privileges.

i.  Business Associate agrees to provide an accounting of such disclosures of PHI to Provider or, as directed by Provider, to an Individual in accordance with 45 CFR § 164.528, as amended from time to time.  Business Associate shall provide such accounting within a reasonable time and manner as specified by the Provider.

j.  Business Associate shall comply with all applicable requirements of the HIPAA Security Rule.

k.  Business Associate shall immediately report to Covered Entity any breach of PHI, as defined by HIPAA.  Business Associate shall cooperate with Covered Entity's investigation, mitigation and response efforts related to any such breach.   Additionally, Business Associate shall be responsible for any costs, liabilities, damages, expenses, and attorney's fees incurred by Covered Entity related to such breach.

l.  In the event Business Associate undertakes any of Covered Entity's duties under HIPAA, Business Associate shall comply with all HIPAA regulations applicable to Covered Entity in the discharge of such duties.

## 2.1  PERMITTED USES AND DISCLOSURES OF PHI BY BUSINESS ASSOCIATE

a.  Business Associate, its agents and employees, may use or disclose PHI as necessary to perform its duties under the Business Arrangement and only as allowed by the terms of the Business Arrangement, this Agreement, or as required or allowed by law.

b.  Business Associate may also use and/or disclose PHI as necessary for the proper management and administration of Business Associate, and to carry out the legal responsibilities of Business Associate.

c.  Business Associate agrees that it will not use or disclose PHI in a manner that violates or would violate the Privacy Rules, or the minimum necessary policies and procedures of the Provider that are communicated to Business Associate.

d.  Business Associate may use PHI to report violations of the law to appropriate Federal and State authorities, consistent with 45 CFR § 164.502(j)(1).

## SECTION III – OBLIGATIONS OF THE PROVIDER

a.  Provider shall notify Business Associate of any limitation(s) in the Provider's notice of privacy practices in accordance with 45 CFR § 164.520, to the extent that such limitation may affect Business Associate's use or disclosure of PHI.

b.  Provider shall notify Business Associate, in writing and in a timely manner, of any restrictions or other arrangement to which the Provider has agreed with an individual in accordance with 45 CFR § 164.522, to the extent that such changes may affect Business Associate's use or disclosure of PHI hereunder; provided however, that the Provider will not agree to, and Business Associate will not be required to comply with, any restriction that is inconsistent with the purpose or terms of the Business Arrangement.

## 3.1 PERMISSIBLE REQUESTS BY PROVIDER

Provider shall not request Business Associate to use and/or disclose PHI in any manner that would not be permissible under the Privacy Rule if done by Provider; provided however, that the Business Associate will use or disclose PHI for management and administrative activities of the Business Associate as outlined in Section 2.1.

## SECTION IV – TERM AND TERMINATION

## 4.1 TERM AND TERMINATION

This Agreement shall remain in effect for the entire term of the Business Arrangement, or until terminated as set forth herein. This Agreement will automatically terminate without further action of the parties upon the termination or expiration of the Business Arrangement, subject to the following:

The Provider acknowledges and agrees that, due to the nature of the Business Arrangement, the Business Associate must have the ability to receive PHI from the Provider for as long as the Business Arrangement is in place, and that the Business Associate must have the ability to receive PHI from the Provider for the duration of any defense obligations arising under the Business Arrangement. Thus, the Provider acknowledges and agrees that termination of this Agreement is not feasible as long as the Business Arrangement is in place, or as long as Business Associate has any defense obligations arising under the Business Arrangement. Accordingly, any other provision in this Agreement notwithstanding, the parties agree that (a) any notice of termination of this Agreement will also serve as notice of termination of the Business Arrangement, (b) the termination of this Agreement will under no circumstances be effective until the termination of the Business Arrangement is effective, and (c) this Agreement may not be terminated and will remain in effect as long as Business Associate has any defense obligations arising under the Business Arrangement.

## 4.2 TERMINATION FOR MATERIAL BREACH

Subject to Section 4.1, upon Provider's knowledge of a material breach by Business Associate, Provider shall either:

a. Provide an opportunity for Business Associate to cure the breach or end the violation and terminate this Agreement and the Business Arrangement if Business Associate does not cure the breach or end the violation within a reasonable time specified by the Provider;

b. Immediately terminate this Agreement and the Business Arrangement if the Business Associate has breached a material term of this Agreement and cure is not possible; or

c. If neither termination nor cure is feasible, Provider shall report the violation to the Secretary of HHS.

## 4.3 RETURN/DESTRUCTION OF PHI

Except as provided in Section 4.4, upon termination of the Business Arrangement (and any ongoing defense obligations, if applicable), for any reason, Business Associate will, if feasible, return or destroy PHI received from, or created or received by it on behalf of the Provider that Business Associate maintains in any form, including any backup tapes. Business Associate shall retain no copies of such information. Business Associate further agrees to use its best efforts to recover PHI in the possession of subcontractors or agents.

**4.4  NO FEASIBLE OR PRACTICAL RETURN/DESTRUCTION OF PHI**

Business Associate has determined that returning or destroying PHI is infeasible for ongoing defense obligations (if applicable), state regulatory requirements imposed upon professional liability insurers, such as reporting, review, and audit requirements, and carrying out any necessary business responsibility of the Business Associate.  This serves as Business Associate's notification to Provider of the conditions that make return or destruction infeasible.  Business Associate shall extend the protections of this Agreement to such PHI and limit further uses and disclosures of such PHI to those purposes that make the return or destruction infeasible, for so long as Business Associate maintains such PHI.

**SECTION V – MISCELLANEOUS**

a.  <u>Regulatory References</u> – A reference in this Agreement to a section of the Privacy Rule means the section as in effect or as amended.

b.  <u>Amendment</u> – The parties recognize that this Agreement may need to be modified from time to time and agree to take such action as is necessary to amend this Agreement for Provider to comply with federal and state law including, but not limited to the requirements of the Privacy Rule and HIPAA.

c.  <u>Survival</u> – The respective rights and obligations of Business Associate under Section 4.3 of this Agreement shall survive the termination of this Agreement.

d.  <u>Notices</u> – All notices and other communications required or permitted pursuant to this Agreement shall be in writing, addressed to the party at the party's regular business address. All notices and other communications shall be sent by overnight courier or sent by registered or certified mail, return receipt requested.

e.  <u>Interpretation</u> – Any ambiguity in this Agreement shall be resolved to permit Provider to comply with HIPAA and the Privacy Rules.

BUSINESS ASSOCIATE:

Signed:

Michael Wayman
Senior Vice President
RSUI Group, Inc.

Address for Notice:

RSUI Group, Inc.
945 East Paces Ferry Road
Suite 1800
Atlanta, GA  30326

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

## ABUSE SUB-LIMIT ENDORSEMENT (MEDICAL-BROAD)

This endorsement modifies insurance provided under the following:

**MEDICAL PROFESSIONAL LIABILITY COVERAGE PART CLAIMS MADE AND REPORTED BASIS - BROAD**

In consideration of the premium charged, it is agreed that **Part I. Insuring Agreements**, **H. Supplementary Coverages**, paragraph **4.** is deleted in its entirety and replaced with the following:

**4.** The Company will pay **Damages** or **Claims Expenses** as a result of any **Claim** arising out of the alleged use of excessive influence or power on any patient, or alleged inappropriate physical contact, or contact that is alleged by any patient to be sexual or in any way unwelcomed, is limited to a sub-Limit of Liability of $1,000,000 each claim and $1,000,000 in the aggregate.  This sub-limit of liability is part of and not in addition to the applicable Limits of Liability as shown in the Declarations.  Payment of **Damages** or **Claim Expenses** by the Company reduces the applicable Limits of Liability as shown in the Declarations.

Once the sub-Limit of Liability is exhausted, no additional coverage shall be afforded by this coverage provision and the following **Exclusion** will be added to the policy:

It is agreed that no coverage shall apply under this policy to any **Claim** for **Damages** or **Claim Expenses** arising out of alleged use of excessive influence or power on any patient, or alleged inappropriate physical contact, or contact that is alleged by any patient to be sexual or in any way unwelcomed.

All other terms and conditions of this policy remain unchanged.

This endorsement effective     12/31/2023
Forms part of Policy Number     LHC854854
Issued to     REPRODUCTIVE GENETIC INNOVATIONS LLC AND
by     Landmark American Insurance Company

Endorsement No.:     01

RSG 54143 0621

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# ADDITIONAL INSURED
# BLANKET

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

SCHEDULE

| |
|---|
| **Name of Person or Organization:** |
| Any person or organization to whom or to which you are obligated by virtue of a written contract or by the issuance or existence of a written permit, to provide insurance such as is afforded by this policy. |

**A.** **SECTION II - WHO IS AN INSURED** is amended to include as an additional insured the person(s) or organization(s) shown on the SCHEDULE, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

**B.** With respect to the insurance afforded to these additional insured, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

This endorsement effective    12/31/2023
forms part of Policy Number    LHC854854
issued to    REPRODUCTIVE GENETIC INNOVATIONS LLC AND
by    Landmark American Insurance Company
                                        Endorsement No.:    02

RSG 55005 0710        Includes copyrighted material of Insurance Services Office, Inc.
                                        with its permission.

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

## ADDITIONAL INSURED ENDORSEMENT WITH CARVE BACK

This endorsement modifies insurance provided under the following:

**MEDICAL PROFESSIONAL LIABILITY COVERAGE PART CLAIMS MADE AND REPORTED BASIS - BROAD COMMERCIAL GENERAL LIABILITY COVERAGE FORM - OCCURRENCE**

1. In consideration of the premium charged, it is agreed that the following are added as an Additional Insured, but solely with regard to professional services rendered or that should have been rendered by the Named Insured:

   USA VEIN CLINCS

   THERMOFISHER FINANCIAL SERVICES

   VIVICELS INTERNATIONAL, LLC (VCI)

   FIRST MIDWEST
   770 DUNDEE ROAD
   ARLINGTON HEIGHTS, IL 60004

2. It is also agreed that the policy does not apply to:

   a. **Claims** by an Additional Insured against the Named Insured; however, if the Company is not defending the above named entity as an Additional Insured, then this exclusion shall not apply.

   b. **Claims** that include allegation or facts indicating sole liability on the part of an Additional Insured.

All other terms and conditions of this policy remain unchanged.

This endorsement effective     12/31/2023
Forms part of Policy Number     LHC854854
Issued to     REPRODUCTIVE GENETIC INNOVATIONS LLC AND
by     Landmark American Insurance Company
                                           Endorsement No.:     03

RSG 55014 1016

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# COMMUNICABLE DISEASE EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Bodily injury" or "property damage" arising out of the actual or alleged transmission of a "communicable disease".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a "communicable disease";

**b.** Testing for a "communicable disease";

**c.** Failure to prevent the spread of the disease; or

**d.** Failure to report the disease to authorities.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Personal and advertising injury" arising out of the actual or alleged transmission of a "communicable disease".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a "communicable disease";

**b.** Testing for a "communicable disease";

**c.** Failure to prevent the spread of the disease; or

**d.** Failure to report the disease to authorities.

**C.** For the purposes of this exclusion:

"Communicable disease" means any illness or disease caused by an infectious agent or its toxins, including but not limited to any bacteria, virus, mold, mildew, fungi, or parasite, that occurs through the direct or indirect transmission of the infectious agent or its product.

This endorsement effective     12/31/2023
Forms part of Policy Number    LHC854854
Issued to      REPRODUCTIVE GENETIC INNOVATIONS LLC AND
by     Landmark American Insurance Company
                                                    Endorsement No.:     04

RSG 56201 0920

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

## CROSS COVERAGE EXCLUSION – MEDICAL BROAD FORM

This endorsement modifies insurance provided under the following:

**MEDICAL PROFESSIONAL LIABILITY COVERAGE PART CLAIMS MADE AND REPORTED BASIS - BROAD COMMERCIAL GENERAL LIABILITY COVERAGE FORM - OCCURRENCE**

The Medical Professional Liability coverage and the Commercial General Liability coverage provided in this Policy are mutually exclusive.

It is agreed that any claim, damages, Supplementary Payments, or any amounts covered under the Commercial General Liability Coverage Form Occurrence RSG 51039 shall not also be covered under the Medical Professional Liability Coverage Part Claims Made and Reported Basis-Broad-RSG 51044.

It is further agreed that any **Claim**, **Damages**, or **Claim Expenses** or any amounts covered under the Medical Professional Liability Coverage Part Claims Made and Reported Basis-Broad-RSG 51044 shall not also be covered under the Commercial General Liability Coverage Form Occurrence RSG 51039.  Whenever any **Claim** is determined to be covered, either wholly or in part, by the Medical Professional Liability Coverage Part Claims Made and Reported Basis-Broad-RSG 51044, the Commercial General Liability Coverage Form shall not apply and the maximum liability of the Company shall not exceed the Professional Liability Each Claim limit of liability shown in the Declarations.

All other terms and conditions of this policy remain unchanged.

This endorsement effective      12/31/2023
Forms part of Policy Number     LHC854854
Issued to     REPRODUCTIVE GENETIC INNOVATIONS LLC AND
by     Landmark American Insurance Company

Endorsement No.:     05

RSG 56136 0319

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# CRYPTOCURRENCY EXCLUSION

This endorsement modifies insurance provided under the following:

**MEDICAL PROFESSIONAL LIABILITY COVERAGE PART CLAIMS MADE AND REPORTED BASIS - BROAD COMMERCIAL GENERAL LIABILITY COVERAGE FORM - OCCURRENCE**

1. In consideration of the premium charged, it is agreed that no coverage shall apply under this policy to any **Claim** and/or **Claim Expenses** alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving **Cryptocurrency** or any **Cryptocurrency Offering**.

2. It is agreed that the following definitions are added to **Part III. Definitions**:

   A. **Cryptocurrency** means any actual or purported electronic, computer derived, digital or virtual instrument, asset, currency, token, coin, unit of account, store of value, funds, or medium of exchange using encryption techniques, methodologies, or technology, including blockchain or similar mechanisms, to secure, verify and/or validate the transfer of such electronic, computer derived, digital or virtual instrument, asset, currency, unit of account, store of value, funds, or medium of exchange between one or more parties.

   B. **Cryptocurrency Offering** means any direct, indirect, actual, alleged, attempted, or proposed purchase or sale, or offer to purchase or sell, any **Cryptocurrency** issued or created by, or in connection with the Insured.

All other terms and conditions of this policy remain unchanged.

This endorsement effective     12/31/2023
Forms part of Policy Number     LHC854854
Issued to     REPRODUCTIVE GENETIC INNOVATIONS LLC AND
by     Landmark American Insurance Company
Endorsement No.:     06

RSG 56216 0822

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# DEDUCTIBLE LIABILITY INSURANCE (COMBINATION POLICY – MULTIPLE DEDUCTIBLES)

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**SCHEDULE**

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| | **PER CLAIM** or | **PER OCCURRENCE** |
| 1)  Bodily Injury Liability | | |
| OR | | |
| 2)  Property Damage Liability | | |
| OR | | |
| 3)  Personal and Advertising Injury Liability | | |
| OR | | |
| 4)  Bodily Injury Liability, Property Damage Liability, Personal and Advertising Injury Liability | $ 25,000 | |

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "Bodily Injury", "Property Damage" and "Personal and Advertising Injury" Liability, however caused):

1. Our obligation under the Bodily Injury Liability, Property Damage Liability, and Personal and Advertising Injury Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

2. The deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above.  The deductible amount stated in the Schedule above applies as follows:

   A. PER CLAIM BASIS.  If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

      1) Under Bodily Injury Liability coverage, to all damages sustained by any one person because of "Bodily Injury";

      2) Under Property Damage Liability Coverage, to all damages sustained by any one person because of "Property Damage";

This endorsement effective     12/31/2023
Forms part of Policy Number     LHC854854
Issued to     REPRODUCTIVE GENETIC INNOVATIONS LLC AND
by     Landmark American Insurance Company
Endorsement No.:     07

RSG 94016 0916
Page 1 of 2

    3) Under Personal and Advertising Injury Liability Coverage, to all damages sustained by any one person because of "Personal and Advertising Injury".

    4) Under Bodily Injury Liability, Property Damage Liability, and Personal and Advertising Injury Liability Coverages Combined, to all damages sustained by any one person because of:

        a) "Bodily Injury";

        b) "Property Damage";

        c) "Personal and Advertising Injury".

    If damages are claimed for care, loss of services or death resulting at any time from "Bodily Injury", a separate deductible amount will be applied to each person making a claim for such damages.

    With respects to "Property Damage" and "Personal and Advertising Injury" Liability, person includes an organization.

B. PER OCCURRENCE BASIS. If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

    1) Under Bodily Injury Liability Coverage, to all damages because of "Bodily Injury";

    2) Under Property Damage Liability Coverage, to all damages because of "Property Damage";

    3) Under Personal and Advertising Injury Liability Coverage, to all damages sustained by any one person because of "Personal and Advertising Injury".

    4) Under Bodily Injury Liability, Property Damage Liability, and Personal and Advertising Injury Liability Coverages Combined, to all damages sustained by any one person because of:

        a) "Bodily Injury";

        b) "Property Damage";

        c) "Personal and Advertising Injury".

3. The terms of this insurance, including those with respect to:

    a) Our right and duty to defend any "suits" seeking those damages; and

    b) Your duties in the event of any "occurrence", claim, or "suit"

    apply irrespective of the application of the deductible amount.

4. We may pay any part of all of the deductible amount to effect settlement of any claims or "suit" and upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

5. When used in this endorsement, damages includes any payments made under the Supplementary Payments provisions of this policy.

6. If you do not promptly reimburse us for any deductible amount owned, then any cost incurred by us in collection of the deductible amount will be added and applied in addition to the applicable deductible amount without limitation. These costs include, but are not limited to, collection agency fees, attorney's fees and interest.

All other terms and conditions of this policy remain unchanged.

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy. Please Read It Carefully.*

# EMPLOYEE BENEFITS LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**Schedule**

| Coverage | Limit Of Insurance | | Deductible | | Premium |
|---|---|---|---|---|---|
| Employee Benefits Programs | $  1,000,000 | each employee | $  2,500 | each employee | $  Included |
| | $  1,000,000 | aggregate | | | |
| Retroactive Date: | December 31, 2017 | | | | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** The following is added to **Section I – Coverages:**

**COVERAGE – EMPLOYEE BENEFITS LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Paragraph **D.** (Section **III** – Limits Of Insurance); and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

**b.** This insurance applies to damages only if:

**(1)** The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";

**(2)** The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

**(3)** A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph **c.** below, during the policy period or an Extended Reporting Period we provide under this policy.

**c.** A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

**(1)** When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

**(2)** When we make settlement in accordance with Paragraph **1.a.** above.

This endorsement effective      12/31/2023
Forms part of Policy Number     LHC854854
Issued to     REPRODUCTIVE GENETIC INNOVATIONS LLC AND
by     Landmark American Insurance Company
                                                    Endorsement No.:      08

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

**d.** All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

**2. Exclusions**

This insurance does not apply to:

**a. Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

**b. Bodily Injury, Property Damage, Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

**c. Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

**d. Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

**e. Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

**(1)** Failure of any investment to perform;

**(2)** Errors in providing information on past performance of investment vehicles; or

**(3)** Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

**f. Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**g. ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**h. Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**i. Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**j. Employment-Related Practices**

Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

**B.** For the purposes of the coverage provided by this endorsement:

**1.** All references to Supplementary Payments – Coverages **A** and **B** are replaced by Supplementary Payments – Coverages **A, B** and **Employee Benefits Liability.**

**2.** Paragraphs **1.b.** and **2.** of the Supplementary Payments provision do not apply.

**C.** For the purposes of the coverage provided by this endorsement, Paragraphs **2.** and **3.** of **Section II – Who Is An Insured** are replaced by the following:

**2.** Each of the following is also an insured:

**a.** Each of your "employees" who is or was authorized to administer your "employee benefit program".

**b.** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

    **c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

    **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

    **b.** Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

**D.** For the purposes of the coverage provided by this endorsement, **Section III – Limits Of Insurance** is replaced by the following:

**1. Limits Of Insurance**

    **a.** The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

      **(1)** Insureds;

      **(2)** "Claims" made or "suits" brought;

      **(3)** Persons or organizations making "claims" or bringing "suits";

      **(4)** Acts, errors or omissions; or

      **(5)** Benefits included in your "employee benefit program".

    **b.** The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

    **c.** Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

      **(1)** An act, error or omission; or

      **(2)** A series of related acts, errors or omissions

    negligently committed in the "administration" of your "employee benefit program".

    However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

**2. Deductible**

    **a.** Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

    **b.** The deductible amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

    **c.** The terms of this insurance, including those with respect to:

      **(1)** Our right and duty to defend any "suits" seeking those damages; and

      **(2)** Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim"

    apply irrespective of the application of the deductible amount.

    **d.** We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

**E.** For the purposes of the coverage provided by this endorsement, Conditions **2.** and **4.** of **Section IV – Conditions** are replaced by the following:

**2. Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"**

   **a.** You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

      **(1)** What the act, error or omission was and when it occurred; and

      **(2)** The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

   **b.** If a "claim" is made or "suit" is brought against any insured, you must:

      **(1)** Immediately record the specifics of the "claim" or "suit" and the date received; and

      **(2)** Notify us as soon as practicable.

     You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

   **c.** You and any other involved insured must:

      **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

      **(2)** Authorize us to obtain records and other information;

      **(3)** Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

      **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

   **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

   **a. Primary Insurance**

     This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

   **b. Excess Insurance**

      **(1)** This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the policy period shown in the Schedule of this insurance and that applies to an act, error or omission on other than a claims-made basis, if:

         **(a)** No Retroactive Date is shown in the Schedule of this insurance; or

         **(b)** The other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this insurance.

      **(2)** When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

      **(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

      **(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

   **c. Method Of Sharing**

     If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

     If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance of all insurers.

**F.** For the purposes of the coverage provided by this endorsement, the following definitions are added to the **Definitions** Section:

1. "Administration" means:

   **a.** Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

   **b.** Handling records in connection with the "employee benefit program"; or

   **c.** Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

   However, "administration" does not include handling payroll deductions.

2. "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

3. "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

4. "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

   **a.** Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

   **b.** Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

   **c.** Unemployment insurance, social security benefits, workers' compensation and disability benefits;

   **d.** Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

   **e.** Any other similar benefits designated in the Schedule or added thereto by endorsement.

**G.** For the purposes of the coverage provided by this endorsement, Definitions **6.** and **19.** in the **Definitions** Section are replaced by the following:

6. "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

19. "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

    **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION – CORRECTIONAL MEDICINE

This endorsement modifies insurance provided under the following:

**MEDICAL PROFESSIONAL LIABILITY COVERAGE PART CLAIMS MADE AND REPORTED BASIS - BROAD**

In consideration of the premium charged, it is agreed no coverage shall apply under this policy to any **Claim** and/or **Claim Expenses** based upon, arising out of, or in any way involving the rendering of or failure to render services of a professional nature, including healthcare services and medical services, by the Insured or by any person or organization for whose acts, errors or omissions the Insured is legally responsible, in a correctional facility or center, detention center, jail, penal institution, prison, remand center, reformatory, or any similar center, facility, or institution.

All other terms and conditions of this policy remain unchanged.

This endorsement effective     12/31/2023
Forms part of Policy Number     LHC854854
Issued to     REPRODUCTIVE GENETIC INNOVATIONS LLC AND
by     Landmark American Insurance Company

Endorsement No.:     09

RSG 56203 0321

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION – DESIGNATED PROFESSIONAL SERVICES

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

SCHEDULE

| **Description Of Professional Services:** |
|---|
| EMBRYO STORAGE LAB |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any professional services shown in the Schedule, the following exclusion is added to Paragraph **2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability**:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service.

All other terms and conditions of this policy remain unchanged.

This endorsement effective     12/31/2023
Forms part of Policy Number     LHC854854
Issued to     REPRODUCTIVE GENETIC INNOVATIONS LLC AND
by     Landmark American Insurance Company

Endorsement No.:     10

RSG 56114 1118

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# SERVICE OF SUIT
# (ILLINOIS)

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

In the event of our failure to pay any amount claimed to be due, we, at your request, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America.  Nothing in this condition constitutes or should be understood to constitute a waiver of our rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court or seek a transfer of a case to another Court as permitted by the laws of the United States or of any state in the United States, moreover, this endorsement is not an agreement that the law of a particular jurisdiction applies to any dispute under the policy.

Service of process in such suit may be made upon the Senior Claims Officer of RSUI Group, Inc. 945 East Paces Ferry Road, Suite 1800, Atlanta, GA  30326-1160, or his designee. In any suit instituted against any one of them upon this contract, we will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above named is authorized and directed to accept service of process on our behalf in any such suit and/or upon your request to give a written undertaking to you that we will enter a general appearance upon our behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America, which makes provision therefore, we hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for the purpose in the statute, or his successor or successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by you or on your behalf or any beneficiary hereunder arising out of  this contract of insurance, and we hereby designate the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

The insurer hereby designates the Director of the Illinois Department of Insurance and his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance.

RSG 92003 0322

**LANDMARK AMERICAN INSURANCE COMPANY**

## *IMPORTANT NOTICE*

**IMPORTANT INFORMATION TO ILLINOIS POLICYHOLDERS**

**RIGHT TO FILE A COMPLAINT**

**KEEP THIS NOTICE WITH YOUR INSURANCE PAPERS**

**PROBLEMS WITH YOUR INSURANCE?** – This notice is to advise you that should any complaints arise regarding this insurance you may contact the following:

RSUI Group, Inc.
945 East Paces Ferry Road
Suite 1800
Atlanta, GA  30326-1160

404-231-2366

You can also contact the **DEPARTMENT OF INSURANCE** by writing to:

Illinois Department of Insurance
Consumer Division or Public Services Section
Springfield, IL  62767

LANDMARK AMERICAN INSURANCE COMPANY

# *IMPORTANT NOTICE*

### ILLINOIS SURPLUS LINES DISCLOSURE NOTICE

**Notice to Policyholder: This contract is issued, pursuant to Section 445 of the Illinois Insurance Code, by a company not authorized and licensed to transact business in Illinois and as such is not covered by the Illinois Insurance Guaranty Fund.**

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# INDEPENDENT CONTRACTOR ENDORSEMENT (MEDICAL)

This endorsement modifies insurance provided under the following:

**MEDICAL PROFESSIONAL LIABILITY COVERAGE PART CLAIMS MADE AND REPORTED BASIS - BROAD**

In consideration of the premium charged, **Part I. Insuring Agreements, Section E. Covered Persons and Entities, Item 2** is deleted in its entirety and replaced with the following:

2.  Any present or former principal, partner, officer, director, employee, volunteer worker or independent contractor of the Named Insured, but only as respects professional services rendered on behalf of the Named Insured;

All other terms and conditions of this policy remain unchanged.

This endorsement effective     12/31/2023
Forms part of Policy Number     LHC854854
Issued to      REPRODUCTIVE GENETIC INNOVATIONS LLC AND
by     Landmark American Insurance Company
                                                            Endorsement No.:     14

RSG 54068 0508

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# MINIMUM RETAINED PREMIUM

This endorsement modifies insurance provided under the following:

**MEDICAL PROFESSIONAL LIABILITY COVERAGE PART CLAIMS MADE AND REPORTED BASIS - BROAD COMMERCIAL GENERAL LIABILITY COVERAGE FORM - OCCURRENCE**

In the event of cancellation of this policy by the Insured, return premium shall be computed at .90 of the pro rata unearned policy premium, subject however to a retention by the company of not less than $33,750.00.

Nothing in this endorsement is deemed to affect the Company's cancellation rights which remain as indicated in the coverage form.

It is further agreed that return premium may be allowed on a pro rata basis if cancelled for non payment of premium or deductible, subject however to retention by the company of the minimum retained premium as shown above.

All other terms and conditions of this policy remain unchanged.

This endorsement effective    12/31/2023
Forms part of Policy Number    LHC854854
Issued to    REPRODUCTIVE GENETIC INNOVATIONS LLC AND
by    Landmark American Insurance Company

Endorsement No.:    15

RSG 54025 0405

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# NUCLEAR ENERGY LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

**MEDICAL PROFESSIONAL LIABILITY COVERAGE PART CLAIMS MADE AND REPORTED BASIS - BROAD COMMERCIAL GENERAL LIABILITY COVERAGE FORM - OCCURRENCE**

**This policy does not apply;**

**a.** **Under any Liability Coverage,** to bodily injury or property damage;

(1) with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, or Nuclear Insurance Associates of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization;

**b.** **Under any Medical Payments Coverage** or any Supplemental Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization;

**c.** **Under any Liability Coverage** to bodily injury or property damage resulting from the hazardous properties of nuclear material, if:

(1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an insured, or (b) has been discharged or dispersed therefrom;

(2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(3) the bodily injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility but if such facility is located within the United States of America, its territories or possessions, or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat;

**d.** **As used in this Endorsement:**

(1) "Hazardous properties" include radioactive, toxic, or explosive properties;

(2) "Nuclear material" means source material, special nuclear material or byproduct material;

(3) "Source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(4) "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor,

This endorsement effective    12/31/2023
Forms part of Policy Number    LHC854854
Issued to    REPRODUCTIVE GENETIC INNOVATIONS LLC AND
by    Landmark American Insurance Company

Endorsement No.:    16

RSG 56058 0903

Page 1 of 2

(5) "Waste" means any waste material (a) containing byproduct material and (b) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (6), (a) or (b) thereof;

(6) "Nuclear facility" means:

(a) any nuclear reactor;

(b) any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing spent fuel, or (iii) handling, processing, or packaging waste;

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste; and includes the site on which any of the foregoing is located, all operations conducted on such site, and all premises used for such operations;

(7) "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

(8) "Property damage" includes all forms of radioactive contamination of property.

All other terms and conditions of this policy remain unchanged.

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# OPIOID AND CONTROLLED SUBSTANCE EXCLUSION

This endorsement modifies insurance provided under the following:

**All Coverages without Limitation**

In consideration of the premium charged, it is agreed that this Policy will not be triggered or apply and will provide no coverage for indemnity, defense, supplemental or any other exposure where **Claims**, suits, occurrences or demands of any sort, without limitation, against any Insured are:

**1.** Based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

   **a.** Any actual or alleged abuse, misuse, illicit use, overuse, addiction, dependency, unlawful distribution, or diversion of any **Controlled Substance**;

   **b.** Any supervision, instruction, training, education, recommendation, or guideline given, or which should have been given, in connection with any **Controlled Substance**; or

   **c.** Inadequate or inaccurate evaluation, control or reporting of, or the failure to evaluate, control or report, the conduct or suspected conduct described in paragraph **1.a.** above.

**2.** Brought by or on behalf of any state, municipality or other governmental entity or agency seeking damages, fines, penalties or any other type of relief, whether monetary or not, arising from or in any way related to any Insured manufacturing, selling, distributing, or dispensing **Controlled Substances**.

For the purposes of this exclusion, **Controlled Substances** shall mean:

**a.** any opioid or narcotic drug, narcotic medication, or narcotic substance of any type, nature or kind, including, but not limited to, buprenorphine, codeine, fentanyl, hydrocodone, morphine, oxymorphone, tapentadol, oxycontin, hydromorphone, medperidine, methadone, oxycodone, or naloxone;

**b.** any substance that is a controlled substance defined by or included in the Schedules of the Controlled Substance Act of the United States of America (21 U.S.C. § 801 et seq.) or any other judicial, statutory, regulatory or other legal measure of any nation, province, state, municipality or other governmental division or subdivision; or

**c.** any substance that is in the future labelled or determined to be any of the substances described in **a.** or **b.** of this definition.

This exclusion applies even if the **Claims** or suits against any Insured allege negligence, including but not limited to negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by any Insured.

This exclusion also applies to any **Claim** or suit by or on behalf of any individual or entity seeking certification at any time as a class action, whether or not such action is actually certified, arising from or in any way related to any Insured manufacturing, selling, distributing, or dispensing **Controlled Substances**.

However, this exclusion shall not apply to any **Claim** by or on behalf of a patient, arising out of an actual or alleged negligent act, error or omission by the Insured in the prescribing, administering, or dispensing of a **Controlled Substance** for its intended use, or in providing counseling or treatment related to any **Controlled Substance**.

All other terms and conditions of this policy remain unchanged.


This endorsement effective     12/31/2023
Forms part of Policy Number     LHC854854
Issued to     REPRODUCTIVE GENETIC INNOVATIONS LLC AND
by     Landmark American Insurance Company
                                                  Endorsement No.:     17

RSG 56191 0421

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# PHYSICIANS, SURGEONS OR DENTISTS ENDORSEMENT WITH TERMINATION (SPECIFIED PHYSICIANS)

This endorsement modifies insurance provided under the following:

**MEDICAL PROFESSIONAL LIABILITY COVERAGE PART CLAIMS MADE AND REPORTED BASIS - BROAD**

In consideration of the premium charged, **Part II. Exclusions, J.** is deleted in its entirety and replaced with the following:

**J.** The rendering or failure to render professional services performed by the Insured as a physician, surgeon, or dentist.  However this Exclusion will not apply to physicians, surgeons or dentists that qualify as covered persons under **Part I. E. Covered Persons and Entities**.

Solely as it pertains to this endorsement, **Part I. E. Covered Persons and Entities** is amended to include:

Physicians, surgeons or dentists as scheduled below, but only while employed by, under contract with, or acting as a volunteer, on behalf of the Named Insured as shown on the Declarations Page and only with respect to Professional Services rendered by or on behalf of the Named Insured.

| NAME OF PHYSICIAN | RETROACTIVE DATE | TERMINATION DATE |
|---|---|---|
| Joseph Leigh Simpson, MD | December 31, 2008 | Not Applicable |
| Lee P. Shulman, MD | August 5, 2011 | Not Applicable |
| Jeffrey S. Dungan, MD | Augst 5, 2011 | September 1, 2015 |

All other terms and conditions of this policy remain unchanged.

This endorsement effective     12/31/2023
Forms part of Policy Number    LHC854854
Issued to     REPRODUCTIVE GENETIC INNOVATIONS LLC AND
by    Landmark American Insurance Company
                                       Endorsement No.:     18

RSG 54116 0122

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully*
# RETROACTIVE DATE AMEDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**MEDICAL PROFESSIONAL LIABILITY COVERAGE PART CLAIMS MADE AND REPORTED BASIS - BROAD COMMERCIAL GENERAL LIABILITY COVERAGE FORM - OCCURRENCE**

In consideration of the premium charged, it is agreed that the **LIMITS OF LIABILITY** – **CGL and Professional Liability** as shown on the Declarations is amended to read as follows:

It is further agreed that the **Retroactive Date(s)** as shown on the Declarations are amended to read as follows:

December 31, 2002, but solely for the Limits of Liability of:

$1,000,000        Each Claim

$3,000,000        Aggregate

And

May 31, 2022, but solely for the Limits of Liability of:

$2,000,000        Each Claim

$4,000,000        Aggregate

And

December 31, 2002, but solely for the Limits of Liability of:

$1,000,000        Each Claim

$3,000,000        Aggregate

All other terms, conditions and warranties remaining unchanged.

This endorsement effective  12/31/2023
forms part of Policy Number  LHC854854
issued    to        REPRODUCTIVE     GENETIC              Endorsement No.: 19
INNOVATIONS LLC AND                                      Date Processed   : January 04, 2024
by:  Landmark American Insurance Company

MANUSCRIPT

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

## SUPPLEMENTARY COVERAGES ENDORSEMENT

This endorsement modifies insurance provided under the following:

**MEDICAL PROFESSIONAL LIABILITY COVERAGE PART CLAIMS MADE AND REPORTED BASIS - BROAD**

In consideration of the premium charged, it is agreed that:

1. **Part I. Insuring Agreements, H. Supplementary Coverages** is amended to include:

   1. The Company will pay **Damages** or **Claims Expenses** as a result of **Claims** arising out of an insured's professional services performed during the rendering of emergency medical treatment without remuneration, at the scene of an accident, medical crisis or disaster.  This coverage is subject to a sub-Limit of Liability in an aggregate amount of $25,000.  There will be no deductible for payments made under this provision, and any such payments are a part of, and not in addition to, the Company's Limits of Liability as described in the Declarations.

   2. The Company will reimburse the Insured for **Evacuation Expenses** actually incurred in connection with an **Evacuation** which first takes place during the **Policy Period** and which is reported to the Company as soon as practicable, but in no event later than thirty (30) days after you first incur **Evacuation Expenses** for which coverage will be requested.  You are not required to obtain the Company's prior written approval or consent before incurring any **Evacuation Expenses**.

      This coverage is subject to a sub-Limit of Liability in an aggregate amount of $25,000.  There will be no deductible for payments made under this provision, and any such payments are a part of, and not in addition to, the Company's Limits of Liability as described in the Declarations.

      No coverage will be available for **Evacuation Expenses** arising out of any:

      a. strike or bomb threat, unless the **Evacuation** was ordered by a civil authority;

      b. false fire alarm or planned evacuation drill;

      c. vacating of one or more residents because of their individual medical condition;

      d. nuclear reaction, radiation, or any radioactive contamination, however caused;

      e. seizure or destruction of property by order of a governmental authority, provided that this exclusion shall not apply to an order of evacuation by a governmental authority due to a condition described above; or

      f. war, including undeclared or civil war, warlike action by a military force, insurrection, rebellion, or revolution.

   3. The Company will pay up to $500 for loss that is due to **Property Damage** to your patient's tangible property if resulting directly from or during the performance of professional services as described in the Declarations.  The Company will make these payments regardless of fault.  These payments will not exceed $5,000 for all such losses resulting from all professional services, regardless of the number of patients whose tangible property is injured.  There will be no deductible for payments made under this provision, and any such payments are a part of, and not in addition to, the Company's Limits of Liability as described in the Declarations.

   4. The Company will reimburse the Insured for **Legal/Media Expenses** actually incurred in connection with a **Legal Defense Proceeding** first brought against an Insured and reported during the **Policy Period** that occurred after the Policy's **Retroactive Date** and that arises out of the Insured's performance of professional services as described in the Declarations.

This endorsement effective    12/31/2023
Forms part of Policy Number    LHC854854
Issued to      REPRODUCTIVE GENETIC INNOVATIONS LLC AND
by    Landmark American Insurance Company

Endorsement No.:      20

RSG 54207 1022                                                                    Page 1 of 2

This coverage is subject to a sub-Limit of Liability in an aggregate amount of $25,000. There will be no deductible for payments made under this provision, and any such payments are a part of, and not in addition to, the Company's Limits of Liability as described in the Declarations.

2. The following Definitions are in addition to Policy Definitions contained in **Part III.** and apply only to this endorsement:

A. **Evacuation** means the removal of all or the majority of patients from one or more of your locations or facilities in response to an actual or threatened, natural or man-made condition that is unexpected and unforeseen and causes the patients of such location or facility to be in imminent danger of loss of life or physical harm.

Such condition must be in the form of an emergency or sudden crisis requiring immediate action, and not the result of a latent or hidden condition at the location or facility.

B. **Evacuation Expenses** means reasonable costs and expenses actually incurred by you in connection with the **Evacuation**, including the costs associated with transporting and lodging patients who have been evacuated. **Evacuation Expenses** shall not include any remuneration, salaries, overhead, fees, or benefit expenses of the Named Insured or any Insured.

C. **Property Damage** means:

1. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2. Loss of use of tangible property of others that is not physically injured. All such loss of use shall be deemed to occur at the time of the accident, including continuous or repeated exposure to substantially the same general harmful conditions that caused it.

For the purposes of this coverage, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

D. **Legal Defense Proceeding** means:

1. A hearing or disciplinary action against an Insured before a state or other licensing board or governmental regulatory body;

2. A civil or criminal proceeding in which the Insured is not a defendant but has been ordered to offer deposition testimony regarding treatment rendered to a patient;

3. A civil or criminal proceeding in which the Insured is not a party but has received a subpoena for record production regarding treatment rendered to a patient; or

4. A HIPAA proceeding.

E. **Legal/Media Expenses** means reasonable fees and costs of attorneys, experts and consultants incurred by the Insured in the investigation and defense of a **Legal Defense Proceeding**. **Legal/Media Expenses** also includes reasonable costs incurred by the Insured in the management of public relations with respect to a **Legal Defense Proceeding**, including reasonable fees and costs of third-party media consultants. Solely with respect to a HIPAA proceeding, **Legal/Media Expenses** shall include civil fines and penalties resulting from any HIPAA proceeding. **Legal/Media Expenses** shall not include any remuneration, salaries, overhead, fees, loss of earning reimbursement or benefit expenses of an Insured.

All other terms and conditions of this policy remain unchanged.

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy. Please Read It Carefully.*

# VIOLATION OF CONSUMER PROTECTION LAWS EXCLUSION

This endorsement modifies insurance provided under the following:

**MEDICAL PROFESSIONAL LIABILITY COVERAGE PART CLAIMS MADE AND REPORTED BASIS - BROAD COMMERCIAL GENERAL LIABILITY COVERAGE FORM - OCCURRENCE**

This insurance does not apply to any **Claim** based upon or arising directly, or indirectly, out of any actual or alleged violation of any federal, state or local consumer protection law(s), statute, ordinance or regulation including, but not limited to, the following:

1.  The False Claims Act (FCA), including any amendment of or addition to such law;

2.  The Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank), including any amendment of or addition to such law;

3.  The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA);

4.  The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

5.  The Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (CAN-SPAM Act), including any amendment of or addition to such law;

6.  Any that address, prohibit, or limit the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information;

7.  Any communication, distribution, publication, sending or transmission via telephone, telephone facsimile machine, computer or other telephonic or electronic devices, including claims asserted under the common law;

8.  **Claims** brought by any state or federal government agency, or any person or entity on their behalf, including qui tam **claims**, seeking to enforce any consumer protection law; or

9.  Actual or alleged violation of any laws, regulations or guidelines relating to the accessibility of the Insured's website.

10. Any biometric privacy law or any such similar law or statute anywhere in the world that governs or relates to the collection, use, safeguarding, handling, storage, retention or destruction of biometric identifiers, biometric data or biometric information of any kind, including but not limited to retina or iris scans, fingerprints, voiceprints, or scans of hand or face geometry.

All other terms and conditions of this policy remain unchanged.

This endorsement effective    12/31/2023
Forms part of Policy Number    LHC854854
Issued to    REPRODUCTIVE GENETIC INNOVATIONS LLC AND
by    Landmark American Insurance Company

Endorsement No.:    21

RSG 56121 1222

*2024*

| | |
|---|---|
| **RSUI Group, Inc.**<br>945 East Paces Ferry Road, Suite 1800<br>Atlanta, GA 30326-1160 | **RENEWAL APPLICATION FOR MISCELLANEOUS<br>MEDICAL PROFESSIONAL LIABILITY INSURANCE<br>(CLAIMS-MADE FORM)** |

**General Applicant Information**

1. Name of Applicant: _Reproductive Genetic Innovations LLC_
   _Reproductive Genetic Institute, Inc._

2. Any changes in Address? ☐ Yes ☒ No (if yes, please complete the below)

   Principal Address: _2910 Mac Arthur Blvd._

3. City: _Northbrook_   County: _Cook_   State: _IL_   Zip Code: _60062_

   Website: _____

**Applicant Practice**

4. Any change in the applicant's professional activities for which coverage is desired? (if yes, please describe below) ☐ Yes ☒ No

   _____
   _____

5. Does the Applicant provide any Correctional Medicine Services? ☐ Yes ☒ No

6. In what states is the Applicant registered and licensed to practice? _IL and NY_

7. During the past 12 months, has the applicant acquired or been acquired by another company? ☐ Yes ☐ No
   If yes please describe below
   _____
   _____

8. State sources and amounts of total revenue: _2022_   _2023_

   | Source | Amount Last Policy Year | This Policy Year |
   |---|---|---|
   | a. Charitable Contributions | $ _____ | $ _____ |
   | b. Government Funding | $ _____ | $ _____ |
   | c. Fee for Services | $ 7,386,098 | $ 7,386,000 |
   | d. _____ | $ _____ | $ _____ |
   | e. _____ | $ _____ | $ _____ |
   | TOTAL GROSS REVENUE: | $ 7,386,098 | $ 7,386,000 |

9. Number of patient encounters last 12 months (_3,500_) and/or patient tests carried out (_3,200_)
   (NOTE: "Patient encounters" refers to number of *visits* – not number of patients.)

10. Number of estimated patient encounters the next 12 months (_3,500_) and/or patient tests carried out (_3,300_)
    (NOTE: "Patient encounters" refers to number of *visits* – not number of patients.)

11. If applicant has a training school, complete the following.

| Specify profession for which students are being trained | Max No. of students per session | No. of sessions per year | % of time involved in clinical setting | Number of students | Qualifications of faculty (eg. MD, RN, PhD) |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |

12. List the number and type of employees, volunteers or independent contractors, their billable hours, and whether or not they carry individual medical malpractice coverage for their services on behalf of the entity.

| | Employees | Volunteers | Independent Contractors | Billable Hours | Insured on own Med Mal Policy |
|---|---|---|---|---|---|
| Aestheticians | | | | | ☐ Yes ☐ No |
| Chiropractors | | | | | ☐ Yes ☐ No |
| Dieticians | | | | | ☐ Yes ☐ No |
| EMT's | | | | | ☐ Yes ☐ No |
| Laboratory Technicians | 10 | | | | ☐ Yes ☒ No |
| Nurse, Aides | | | | | ☐ Yes ☐ No |
| Nurse Anesthetists | | | | | ☐ Yes ☐ No |
| Nurses, Licensed Practical | | | | | ☐ Yes ☐ No |
| Nurse Midwives | | | | | ☐ Yes ☐ No |
| Nurse Practitioner | | | | | ☐ Yes ☐ No |
| Nurse, Registered | | | | | ☐ Yes ☐ No |
| Opticians | | | | | ☐ Yes ☐ No |
| Optometrists | | | | | ☐ Yes ☐ No |
| Paramedics | | | | | ☐ Yes ☐ No |
| Perfusionists | | | | | ☐ Yes ☐ No |
| Pharmacists | | | | | ☐ Yes ☐ No |
| Pharmacy Technicians | | | | | ☐ Yes ☐ No |
| Physical/Occupational/Speech Therapists | | | | | ☐ Yes ☐ No |
| Physical/Occupational/Speech Therapist Assistants | | | | | ☐ Yes ☐ No |
| Physician's Assistants | | | | | ☐ Yes ☐ No |
| Physicians – Minor Surgery | | | | | ☐ Yes ☐ No |
| Physicians – No Surgery | | | | | ☐ Yes ☐ No |
| Psychologists | | | | | ☐ Yes ☐ No |
| Respiratory Therapists | | | | | ☐ Yes ☐ No |
| Social Workers | | | | | ☐ Yes ☐ No |
| Other: _____ | | | | | ☐ Yes ☐ No |

RSG 50090 0222

Page 2 of 3

13. Does the applicant maintain any beds for overnight occupancy? (If yes, total number): **No**

What is the average length of stay? _____

14. Does the Applicant warrant that all employed and contracted physicians, surgeons and dentists maintain their own medical malpractice professional liability insurance coverage and confirm with a certificate of insurance or declarations page?   ☒ Yes ☐ No
If no, please attached explanation.

## Applicant History

15. Is the applicant currently insured under a Commercial General Liability Policy?   ☐ Yes ☐ No
If yes, please give details:

| Insurance Company | Type of Coverage | Limits BI | Limits PD | From | To |
|---|---|---|---|---|---|
| Landmark | | | | | |

16. In the past twelve (12) months, has any professional liability claim or suit been made against the Applicant or any of its predecessor firms? Please complete the **Claim Supplement** and provide currently valued company loss runs   ☐ Yes ☒ No
If "Yes", how many? _____

17. Have all matters in Question 15. been reported to RSUI or to the Applicant's former or current insurer(s) or to the former Insurer of any predecessor firm or former insurer of a current member of the Firm?   ☒ Yes ☐ No

18. Has any principal, owner, partner or employee for whom coverage is sought been the subject of a disciplinary complaint made to any court, administrative agency or regulatory body? (If "yes", provide full details and documentation)   ☐ Yes ☒ No

## Representations

The Applicant declares that the above statement and representations are true and correct, and that no facts have been suppressed or misstated. All written statements and materials furnished to the Company, in conjunction with this application will be incorporated by reference into this application and made part hereof.

This application does not bind the Applicant to buy, or the Company to issue the insurance, but it is agreed that this form shall be the basis of the contract should a policy be issued, and it will be attached to and made part of the policy. The undersigned Applicant declares that if the information supplied on this application changes between the dates of this application and the time when the policy is issued, the Applicant will immediately notify the company of such changes, and the Company may withdraw or modify any outstanding quotations and/or authorization or agreement to bind the insurance.

_Shannio Babisky_          Financial Director          11-28-23
Signature of the Insured, Owner, Partner or Principal          Title          Date

_____
Producer

Your policy has been signed on our behalf by our President and by our Secretary.  However, your policy will not be binding on us unless it is also countersigned by one of our duly authorized agents.

President

**RSUI Indemnity Company**
**Landmark American Insurance Company**
**Covington Specialty Insurance Company**

Secretary

**RSUI Indemnity Company**
**Landmark American Insurance Company**
**Covington Specialty Insurance Company**