**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

LANDMARK AMERICAN INSURANCE CO.,

Plaintiff,

v.

REPRODUCTIVE GENETICS INSTITUTE
INC.,

Defendant.

No. 25 CV 1528

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiff and counter-defendant Landmark American Insurance Company issued a liability coverage policy to defendant and counter-plaintiff Reproductive Genetics Institute, Inc. During the coverage period, Noelia Donamaria filed a class action complaint against RGI alleging various counts of fraud and misrepresentation. Landmark now brings this lawsuit, pursuant to 28 U.S.C. §§ 2201 and 2202, seeking a declaration that it has no duty to defend RGI with respect to Donamaria's lawsuit. Landmark moves for judgment on the pleadings (both on its own claims and on RGI's counterclaims). For the reasons discussed below, the motion is granted.

## I. Legal Standards

Federal Rule of Civil Procedure 12(c) states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings" to "dispose of the case on the basis of the underlying substantive merits." Fed. R. Civ. P. 12(c); *Wolf v. Riverport Ins. Co.*, 132 F.4th 515, 518 (7th Cir. 2025) (internal quotation marks and citation omitted). The standard is nearly identical to

that for a motion to dismiss; the "only difference … is timing." *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020). To succeed on the motion, the moving party must "demonstrate that there are no material issues of fact to be resolved." *Id.* Under Rule 12(c), I am limited to the pleadings, which include the complaint, answer, and written instruments attached as exhibits. Fed. R. Civ. P. 10(c). Here, that means I can consider the insurance policy and the complaint in the underlying lawsuit.

## II.    Background

### A.    The Underlying Lawsuit

In October 2024, Noelia Donamaria filed a lawsuit against RGI asserting that (1) RGI advertises, markets, and sells preimplantation genetic testing for aneuploidy (PGT-A); (2) RGI sells that testing in connection with the IVF process to screen embryos for abnormalities; and (3) Donamaria and other purported class members purchased the testing from RGI and relied on its representations through its advertising and marketing. [1] ¶¶ 9–10.[1]

The underlying lawsuit alleges causes of actions for violations of Illinois's Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2 and Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2, breach of the

---

[1] The court has subject-matter jurisdiction over this case because plaintiff is a corporation organized in New Hampshire and with its principal place of business in Georgia, defendant is a corporation organized and with its principal place of business in Illinois, and the amount in controversy exceeds $75,000. [1] ¶¶ 4–6; 28 U.S.C. § 1332(a)(1), (c)(1). Illinois law, the law of the state in which this federal court sits, applies. *Fednav Int'l Ltd. v. Continental Ins. Co.*, 624 F.3d 834, 838 (7th Cir. 2010). The parties agree that Illinois law applies. [37] at 11; [41] at 8. Bracketed numbers refer to entries on the district court docket and page numbers are taken from the CM/ECF header placed at the top of filings.

implied warranty of merchantability, breach of the implied warranty of usability, fraud, fraud by concealment, unjust enrichment, and breach of express warranty. [1] ¶ 11.[2] These counts are based on claims that RGI engaged in false and deceptive advertising and failed to fully disclose the accuracy of its PGT-A testing. [1] ¶ 11.

### B.    The Landmark Policy

The relevant Landmark insurance policy covered RGI as an "Embryo Storage Lab" from December 31, 2023, to December 31, 2024. [37-1] at 3. The policy includes two coverages: Commercial General Liability coverage and Medical Professional Liability coverage. [37-1] at 6.

The general liability coverage provides that Landmark will pay those sums that RGI becomes legally obligated to pay as damages because of "bodily injury," "property damage," or "personal and advertising injury" to which the insurance applies. [37-1] at 7, 14. The medical professional liability coverage provides that Landmark will pay damages "arising out of a negligent act, error, or omission … in the rendering of or failure to render professional services." [37-1] at 29. The policy's declarations define RGI's professional services as an "embryo storage lab." [37-1] at 58. The medical liability coverage does not apply to any claim "based upon or arising out of … dishonest, fraudulent, criminal, malicious, or intentional acts, errors or omissions committed by or at the direction of any Insured." [37-1] at 32.

---

[2] Donamaria filed an amended class action complaint in the underlying lawsuit shortly after the parties finished briefing the instant motion. Amended Class Action Complaint, *Donamaria et al. v. Reprod. Genetic Innovations, Inc.*, No. 24-09535 (N.D. Ill. Mar. 3, 2026). The amended complaint adds another named plaintiff and brings three new claims (under West Virginia and New York consumer-protection laws). The overarching allegations of the complaint in the underlying lawsuit have not changed.

The insurance policy also contains an endorsement titled "Violation of Consumer Protection Law Exclusion." [37-1] at 71. The endorsement states that the "insurance does not apply to any **Claim** based upon or arising directly, or indirectly, out of any actual or alleged violation of any federal, state or local consumer protection law(s)." [37-1] at 71 (bolding in original). The commercial general liability coverage defines "claim" as a "written demand for damages because of actual or alleged "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. [37-1] at 24. The medical professional liability coverage defines "claim" as a "written demand for monetary or non-monetary relief received by the insured during the" policy period. [37-1] at 34.

The insurance policy states that Landmark "will have the right and duty to defend" RGI against any suit seeking those damages to which the insurance applies— but will have no duty to defend RGI against any suit seeking damages to which the insurance does not apply. [37-1] at 7.

In July 2024, Donamaria issued a demand letter upon RGI, and RGI tendered the demand to Landmark to review for coverage. [1] ¶ 18. Landmark denied coverage, and the underlying lawsuit was filed that October. [1] ¶¶ 19–20. In November 2024, Landmark denied coverage for the underlying lawsuit and requested that RGI consider formally withdrawing its tender for coverage. [1] ¶ 22. RGI declined this request. [1] ¶ 23.

Landmark then filed the present suit seeking a declaration that it has no duty to defend or indemnify RGI in the underlying lawsuit. RGI filed mirror-image

counterclaims for a declaration that Landmark has a duty to defend RGI in the underlying lawsuit and that Landmark has breached the insurance policy by denying coverage. Landmark moves for judgment on the pleadings on all claims.

## III.   Analysis

Landmark moves for judgment on the pleadings on the grounds that neither the general liability policy nor the medical professional liability policy covers the claims in Donamaria's lawsuit. RGI counters that both coverage policies are triggered by the underlying lawsuit and that judgment on the pleadings is improper at this time.

A duty-to-defend action begins "with the deck stacked in favor of the insured." *Del Monte Fresh Produce v. Transp. Ins. Co.*, 500 F.3d 640, 643 (7th Cir. 2007). In determining whether the insurer owes the insured a duty to defend an action brought against it, "the general rule [is] that the allegations of the complaint determine the duty." *Maryland Cas. Co. v. Peppers*, 64 Ill.2d 187, 193 (1976). If the complaint alleges facts within—or potentially within—the coverage of the policy, the duty to defend has been established. *Id.* But where the allegations in the underlying complaint are sufficiently specific to preclude coverage under the insured's policy, declaratory relief in favor of the insurer is proper. *See Del Monte*, 500 F.3d at 646.

### A.   Medical Professional Liability Coverage

The underlying complaint against RGI describes the action as one based on economic losses sustained "as a result of RGI's false, deceptive, unfair, and misleading advertising and promotion of [PGT-A]." [37-2] ¶ 1. Landmark argues that

5

marketing and advertising are not professional services in the context of an embryo storage lab (regardless of whether the conduct alleged in the underlying lawsuit arose out of a negligent or intentional act). [37] at 12–15.

I agree. As supported by the common questions of law and fact relevant to each purported class member, the underlying complaint primarily alleges that RGI's marketing of PGT-A testing was false and misleading. *See* [37-2] ¶ 241. Consumer claims involving misrepresentation in promotion do not arise out of an act in the rendering or failure to render an embryo storage lab service. The risk of conducting one's business in a deceptive and fraudulent manner is not one inherent in the practice of embryo storage. *See Crum & Forster Managers Corp. v. Resol. Trust Corp.*, 156 Ill.2d 384, 394 (1993); *see also Peerless Indem. Ins. Co. v. Cremation Servs., Inc.*, 2023 WL 2961388, at *8 (Ill. App. Ct. Apr. 14, 2023) (finding that a complaint alleging deliberate tortious conduct could not be characterized as a failure to provide professional cremation services).

RGI argues that the underlying lawsuit *does* "allege acts and omissions by RGI in the actual performance of … a professional service." [41] at 10. RGI directs me to language that can be found in two paragraphs of the original 325-paragraph complaint. In one paragraph, Donamaria alleged that RGI, through its advertising, marketing, website statements, videos, testing reports, and other statements made to consumers, made partial representations regarding PGT-A but failed to disclose facts that would have materially qualified those partial representations. [41] at 10–11 (quoting [37-2] ¶ 301). In another paragraph, Donamaria alleged that RGI

purported, through its marketing and advertising, consent form, and test results, that its PGT-A testing was accurate and reliable. [41] at 11 (quoting [37-2] ¶ 321).

But allegations cannot be read in isolation; they must be reviewed "in the context of the entire complaint." *LJM Partners, Ltd. v. Barclays Cap., Inc.*, 165 F.4th 552, 566 (7th Cir. 2026). Whether RGI breached some duty to inform is not relevant to the overarching allegations in the complaint. Even more, the typicality requirement of a class action is lacking where the class representative cannot know whether all class members received full information and warnings regarding a service. *See Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 597 (7th Cir. 1993). Thus, RGI's theory of the allegations in the underlying complaint are antithetical to theories advanced by Donamaria.

RGI also argues that the conduct alleged in the underlying complaint involves the application of specialized knowledge and thus constitutes professional services under the medical professional liability coverage policy. [41] at 11–13. But the preparation of marketing material related to embryo storage "is not a professional service in its own right." *See Westport Ins. Corp. v. Jackson Nat'l Life Ins. Co.*, 387 Ill.App.3d 408, 414 (2008). Claims pertaining to advertising and marketing, particularly where the harm alleged was at the point of sale, *see* [37-2] ¶ 241, do not implicate the rendering of professional services, regardless of whether the misconduct alleged was negligent or intentional. Though Landmark directs me to a non-binding case, I agree with the court in *Elite Integrated Medical, LLC v. Hiscox, Inc.* that any advertising regarding PGT-A testing was incidental to RGI's professional services as

7

an embryo storage lab. *See* 553 F.Supp.3d 1307, 1316 (N.D. Ga. 2021). The medical professional liability policy does not cover the claims alleged in the underlying lawsuit.

### B. Commercial General Liability Coverage

RGI briefly argues that even if the medical professional liability coverage is inapplicable, the commercial general liability coverage is nevertheless triggered because the underlying lawsuit alleges damages that qualify as bodily injuries. [41] at 13–14. Once again, RGI cherry-picks the complaint to find language supporting this proposition. Namely, RGI quotes Donamaria's allegations that PGT-A testing results "in the unnecessary loss of embryos," "embryos that could result in live births not being transferred," and "embryos that could result in live births being discarded." [41] at 14.

But read as a whole, the underlying lawsuit does not allege that any purported class members actually lost embryos as a result of RGI's PGT-A testing. The factual allegations RGI cites in its opposition brief do not assert anything distinct from the overarching claims in the underlying lawsuit: that class members would not have purchased PGT-A testing absent RGI's alleged misrepresentation and advertising misstatements. Donamaria's alleged injuries are entirely financial in nature. *See generally* [37-2]. The underlying lawsuit is not covered by the general commercial liability policy.

Because neither the medical professional liability coverage nor commercial general liability coverage is satisfied, Landmark is entitled to judgment on the

pleadings with respect to Counts I and II of its complaint. For the same reason, Landmark is also entitled to judgment on the pleadings with respect to RGI's counterclaims for declaratory judgment and breach of contract. [35] ¶¶ 41–70. Landmark has no duty to defend or indemnify RGI in the underlying lawsuit and Landmark did not breach the insurance policy by denying coverage to RGI.

### C.    Consumer Protection Law Exclusion

Count III of Landmark's complaint seeks a declaratory judgment that the Violation of Consumer Protection Laws Exclusion applies to preclude coverage for the underlying lawsuit. [1] at 8–9. Landmark argues that the exclusion provides an independent basis for granting its motion for judgment on the pleadings because the exclusion operates as a categorical exclusion that applies to the entirety of the underlying lawsuit. [37] at 17–18; [43] at 11–12.

RGI does not dispute that the exclusion precludes the first count of Donamaria's original complaint, which arises under the Illinois Consumer Fraud and Deceptive Business Practices Act, but instead argues that an insurer's duty to defend is triggered so long as at least one of the alleged claims falls within the policy's coverage. [41] at 11 (citing *Peppers*, 64 Ill.2d at 194).

Landmark cites *Market Street Bancshares, Inc. v. Federal Insurance Co.*, 962 F.3d 947 (7th Cir. 2020), for the proposition that the term "claim," as defined in the policy, spans Donamaria's entire civil action. [43] at 11. The policy here defines "claim" as "a written demand for monetary or non-monetary relief received by the insured during the policy period." [37-1] at 33 (cleaned up). But the policy in *Market*

9

*Street* defined "claim" as "a written demand for monetary or non-monetary relief" *or* "a civil proceeding commenced by the service of a complaint or similar pleading." 962 F.3d at 953. While the court found that a claim taking the form of a civil proceeding spanned the entire civil action, the court did not make such a sweeping statement with respect to the "written demand" language, which is the language that appears in the policy at issue in this case. *Id.*

Finding that "written demand" is not synonymous with "civil proceeding," the Violation of Consumer Protection Laws Exclusion could be read to not exclude coverage for Donamaria's claims of breach, fraud, and unjust enrichment, despite indisputably excluding coverage for her claims alleging violations of local consumer protection laws. But even if the exclusion did not apply to the entire lawsuit, the duty to defend and indemnify would still require coverage, and as discussed above neither coverage provision invoked by RGI applies.

Under the Declaratory Judgment Act, I have discretion *not* to hear a declaratory judgment action, even where jurisdiction exists. 28 U.S.C. § 2201(a); *see also Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 747 (7th Cir. 1987). Having already found that Landmark has no duty to defend or indemnify RGI in the underlying lawsuit, I decline to decide whether the exclusion means Landmark has no duty to defend for a third independent reason. That question is unnecessary to answer to resolve the parties' dispute. Count III is dismissed without prejudice.[3]

---

[3] Claims that are dismissed because the court, in exercising its "substantial discretion" under the Declaratory Judgment Act, declines to hear them are dismissed without prejudice. *See Amling v. Harrow Indus. LLC*, 943 F.3d 373, 379 (7th Cir. 2019) (citation omitted). However, amendment would be futile. I have already granted judgment on the pleadings in favor of

## IV. Conclusion

Landmark's motion for judgment on the pleadings, [37], is granted with respect to Counts I and II. RGI's counterclaims, [35], are dismissed with prejudice. The clerk shall enter judgment in favor of plaintiff, declaring that plaintiff has no duty to defend or indemnify defendant from the claims asserted in *Donamaria et al. v. Reprod. Genetic Innovations, Inc.*, No. 24-09535 (N.D. Ill.). Terminate civil case.

ENTER:

_Manish S. Shah_

Manish S. Shah
United States District Judge

Date: May 14, 2026

---

plaintiff and any decision with respect to Count III would neither affect this litigation nor alter Landmark's duties in the underlying lawsuit. While dismissal without prejudice typically does not constitute a final judgment, I find that Count III cannot "be saved by an amendment of the complaint which the plaintiff could reasonably be expected to make." *Principal Mut. Life Ins. Co. v. Cincinnati TV 64 Ltd. P'ship*, 845 F.2d 674, 676 (7th Cir. 1988). Any finding to the contrary would serve only to delay RGI's right to appeal a final judgment.